UNITED STATES of America,
Appellant,

v.

William Alexander HAYE and Claudius
A. Reid, Appellees.

No. 86–5009.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 10, 1986.

Decided Aug. 4, 1987.

Rehearing and Rehearing En Banc
Denied Sept. 4, 1987.

William G. Otis, Asst. U.S. Atty. (Justin W. Williams, U.S. Atty. on brief), for appellant.

Robert Stanley Powell, Eugene M. Bond on brief, for appellees.

Before WIDENER, Circuit Judge, HAYNSWORTH, Senior Circuit Judge, and MAXWELL, United States District Judge for the Northern District of West Virginia, sitting by designation.

HAYNSWORTH, Senior Circuit Judge:

After the indictment of these two drug couriers for drug offenses, the district court granted a motion to suppress the cocaine that had been seized from them. It concluded that the case was controlled by *Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980), and that there was no probable cause for their arrest. On the government's appeal, we conclude that *Reid v. Georgia* is not controlling, and reverse the suppression order.

## I.

At the suppression hearing, the testimony of the two law enforcement officials was taken. The defendants presented no evidence, so the operative facts are disclosed entirely by the uncontradicted testimony of the law enforcement officials.

On the night of November 6, 1985 William Haye and Claudius Reid arrived at the Washington National Airport on a flight from Miami, Florida. The attention of Drug Enforcement Administration agent John Lee and Washington Metro Police officer Michael Bernier was drawn to the two as they deplaned and proceeded through the terminal. Reid appeared nervous, while Haye followed some 20 to 25 feet behind him but furtively keeping Reid under constant observation. Because they exhibited some of the characteristics of the drug courier profile, the officers approached the two just as the two came together after leaving the terminal building. Bernier held up his credentials and announced that they were police, whereupon Haye and Reid bolted in different directions.

Lee ran after Haye, while Bernier ran in pursuit of Reid.

Lee shouted to Haye, "Police, stop," and then, "stop or I'll blow your damned brains out." Haye then stopped. As Lee approached Haye, he exhibited his credentials and again identified himself as a law enforcement officer. Haye was unresponsive when asked by Lee why he had run and if he had anything in his carry-on bag. Lee then asked, "Now, the stuff's in the bag, isn't it?", to which Haye responded affirmatively. Lee testified that he had no doubt that Haye understood the word "stuff" to mean cocaine.

As the two men walked back toward the terminal, Lee inquired if Haye would permit him to look into the handbag, and Haye agreed. Lee did not then open the bag, but placed Haye under arrest and gave him the *Miranda* warnings.

Meanwhile, Bernier overtook the fleeing Reid. The two men wrestled and fell to the ground. Reid continued to struggle, though Bernier again informed him that he was a police officer. Finally, Bernier forced Reid's hands behind his back and cuffed them. Bernier testified that he could not have detained Reid with any less

force because Reid was persistent in his attempt to get away.

As Reid got to his feet, Bernier saw a bulge about the size of a baseball below Reid's belt. Bernier squeezed the bulge and concluded that it was narcotics. Reid then inquired why he was being arrested, and Bernier, pointing to the bulge, said "that."

After their arrest, the two men were escorted to the airport police station. There Haye's handbag was searched and five ounces of cocaine were found in it. The bulge on Reid's person was found to contain three ounces of cocaine.

## II.

In *Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980), it appeared that two men arrived at the Atlanta airport on a flight from Fort Lauderdale, Florida. They were carrying only shoulder bags, and they exhibited several characteristics of the drug courier profile. When accosted, both nervous men produced identification, the airline tickets indicating a one-day stay in Fort Lauderdale. They agreed to return to the terminal for a search of their shoulder bags. Reid then attempted to flee, however, and he abandoned his shoulder bag. Focusing upon the facts known to the officers at the time of the initial stop, the Supreme Court held that they did not create a reasonable suspicion that Reid was involved in criminal activity sufficient to justify an involuntary investigative detention. *Id.* at 441, 100 S.Ct. at 2754.

Under the Supreme Court's *Reid* decision, it is clear that at the time of the initial encounter the officers did not have reasonable suspicion sufficient for an involuntary investigative detention. Haye and Reid could have declined to answer questions and walked away. *Florida v. Royer*, 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983). That was not the course that Haye and Reid took, however. Instead, there was sudden panic and precipitous flight. Without considering whether the circumstances gave probable cause for an arrest at that time, as the district court

did, we conclude that all of the circumstances, including the flight, furnished reasonable suspicion for a brief, involuntary, investigative stop.

This case is altogether different from the Supreme Court's decision in *Reid.* In that case, the Georgia court had held the fact that the men met the drug courier profile provided reasonable suspicion warranting a brief, involuntary, investigative stop. The Supreme Court disagreed and held that more was required than the presence of drug courier profile characteristics. Concentration was thus upon the facts known to the officers at the time of the initial encounter. This is made doubly clear by the concurring opinion of Justice Powell. *Reid,* 448 U.S. at 442–43, 100 S.Ct. at 2754–55. In *Reid,* Reid's attempted flight did not occur until later and did not enter into the assessment of the presence of a reasonable suspicion at the time of the initial encounter. In this case, there is nothing to indicate that the officers intended to initiate anything more than a consensual conversation. They announced that they were policemen, but that is a necessary prelude to inquiries of a traveler about such things as his name and his flight ticket. It was then, however, that the two men bolted in sudden panic.

■ Innocent passengers fly on airplanes from such cities as Miami that are known sources of drug supplies. Some of them may take circuitous routes through airline terminals and appear to be nervous or furtive, but they do not break into precipitous flight upon being informed by a man in civilian clothing that he is a policeman. Against the background of drug courier characteristics they had shown, their flight from the presence of two men upon their announcement that they were policemen gave the policemen reasonable, articulable suspicion, based upon objective facts, quite sufficient to warrant a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Place*, 462 U.S. 696, 702, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983).

This case is quite similar, factually, to *United States v. Pope*, 561 F.2d 663 (6th Cir.1977), in which it was held that flight under such circumstances supplies sufficient ground for a limited, investigative stop.

■ The defendants complain, nonetheless, of the use of force. By its very nature, however, a *Terry* stop is involuntary, and the suspect is not free to avoid it by flight. To that extent, his freedom is limited, and the policeman is authorized to use such reasonable force as may be necessary to accomplish the purpose of the limited stop. *See United States v. Sharpe*, 470 U.S. 675, 678, 105 S.Ct. 1568, 1571, 84 L.Ed.2d 605 (1985); *United States v. Jones*, 759 F.2d 633, 636 (8th Cir.), *cert. denied*, 474 U.S. 837, 106 S.Ct. 113, 88 L.Ed.2d 92 (1985); *cf. Immigration and Naturalization Service v. Delgado*, 466 U.S. 210, 215, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984).

### III.

■ Haye was arrested only after he admitted that he had cocaine in his bag. His admission was quite sufficient to provide probable cause for his arrest and the subsequent search of the bag.

■ Reid was not arrested until after Bernier had observed the large bulge in his trousers beneath his belt. With the background of all that Bernier had observed, including Reid's attempt to escape, the incriminating bulge in Reid's trousers beneath his belt furnished probable cause for his arrest. When there are other indications of drug courier activity, the presence of such a suspicious bulge can provide a trained drug enforcement officer with probable cause to believe that the bulge is a package containing narcotics. *United States v. Aguiar*, 825 F.2d 39 (4th Cir. 1987); *United States v. Lehmann*, 798 F.2d 692 (4th Cir.1986); *cf. United States v. Harrison*, 667 F.2d 1158 (4th Cir.), *cert. denied*, 457 U.S. 1121, 102 S.Ct. 2937, 73 L.Ed.2d 1335 (1982).

### IV.

As to both defendants, the suppression order is reversed, and the case remanded for further proceedings.

REVERSED AND REMANDED.