898 F.2d 148
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald FRANCOIS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald FRANCOIS, Defendant-Appellant.
 Nos. 88-5207, 89-7070.
 United States Court of Appeals, Fourth Circuit.
 Argued: July 27, 1989.
Decided: March 5, 1990.
 
 Appeals from the United States District Court for the Northern District of West Virginia, at Elkins. Robert R. Merhige, Jr., Senior District Judge, sitting by designation. (CR-88-81)
 Trace Weese, Askin, Pill, Scales & Burke, L.C., Martinsburg, W. Va., for appellant.
 Thomas Oliver Mucklow, Assistant United States Attorney, Wheeling, W. Va., for appellee. On Brief: Steven M. Askin, Askin, Pill, Scales & Burke, L.C., Martinsburg, W. Va., for appellant.
 William A. Kolibash, United States Attorney; Beth Heier Lurz, Assistant United States Attorney, Wheeling, W.Va., for appellee.
 N.D.W.Va.
 AFFIRMED.
 Before DONALD RUSSELL, WIDENER and K.K. HALL, Circuit Judges.
 PER CURIAM:
 
 
 1
 Ronald Francois appeals from his conviction under 21 U.S.C. section 841(a)(1) for possession of cocaine with intent to distribute. We find no merit in any of Francois' assignments of error, and we affirm.
 
 
 2
 Two Charles Town, West Virginia, police officers, Robert Buracker and Douglas Nichols, observed appellant Ronald Francois while the officers were on routine patrol in an area of Charles Town known as "the strip" that was notorious for its open air drug trafficking. Members of the federal narcotics task force had contacted Officer Buracker and asked him to help identify an individual who had sold drugs to them in that area the previous day. After observing Francois standing on a street corner, the officers, in an effort to move closer to Francois and possibly identify him, turned their police cruiser around and drove to the intersection where Francois was standing. As the officers approached the corner, Francois turned away and began walking up a one-way street in the direction opposite to the flow of traffic. Unable to follow Francois, the officers circled the block, where they met Francois walking up an intersecting road.
 
 
 3
 As the officers again drew near, Francois took a handkerchief from his pocket and put it to his face "like he was blowing his nose." In removing the handkerchief Francois dropped a piece of paper money from his pocket onto the sidewalk. While Francois continued to walk at the same pace, the officers stopped their car and Officer Buracker shouted to Francois, informing him of the fallen money. Francois returned to the location at which the money had fallen out, where he picked up the money and thanked the officer. Officer Buracker told Francois that he did not know him and asked his name, whereupon Francois immediately turned and ran.
 
 
 4
 Officer Buracker pursued Francois on foot. At several points during the chase, Buracker observed Francois reach into his right pocket "like he was trying to remove something." After covering approximately two blocks, Francois lost his balance and fell, catching himself with one arm and again reaching into his right pocket with his other hand. Buracker, who was immediately behind Francois at the time of the fall, took control of Francois by placing Francois' arm up behind his back. Buracker then rubbed his hand across Francois' pocket and, after feeling a lump inside, reached into the pocket of Francois' coveralls and removed a plastic bag that subsequently proved to contain 6.40 grams of 86.4% pure cocaine, also known as crack. Officer Buracker then placed Francois under arrest.
 
 
 5
 A federal grand jury later indicted Francois on two counts[1] of possession of cocaine or crack with intent to distribute, a violation of 21 U.S.C. section 841(a)(1). At trial, a jury found Francois guilty of the first count, but acquitted him on count two.
 
 
 6
 Francois argues that the evidence used against him, the cocaine, was the product of an unconstitutional search and seizure. Specifically, Francois asserts that, because the chase, stop, and search of his person were not supported by probable cause or a reasonable suspicion of criminal activity, Officer Buracker's actions violated the fourth amendment to the Constitution and the district court should have suppressed the evidence Buracker obtained.
 
 
 7
 Francois incorrectly argues for de novo review of the denial of his motion to suppress. Because a district court "engages in a factual determination in resolving a dispute over the nature of an encounter between police and [a] citizen," however, the law in this circuit is that "we will not disturb such a determination unless it is clearly erroneous." United States v. Porter, 738 F.2d 622, 625 (4th Cir.) (en banc), cert. denied, 469 U.S. 983 (1984); accord United States v. Gray, 883 F.2d 320, 322 (4th Cir.1989).
 
 
 8
 The Supreme Court has refused to fashion a bright-line rule applicable to investigatory pursuits. Michigan v. Chesternut, 486 U.S. 567, 572-73 (1988). Instead, the Supreme Court has decided that, in determining whether police conduct implicates the fourth amendment, courts should examine the totality of the circumstances surrounding the incident in each individual case. Id. Depending upon those circumstances, an encounter between police and a citizen may be voluntary contact that raises no constitutional concerns, a limited investigative stop that requires a reasonable, articulable suspicion of criminal activity, or a traditional arrest that requires probable cause. Porter, 738 F.2d at 625.
 
 
 9
 Given the facts of the instant case, we hold that Officer Buracker had a reasonable, articulable suspicion of criminal activity from the moment Francois fled, which justified a brief investigatory stop of Francois.[2] First, the officers were on patrol in an area known for its criminal activity. See United States v. Moore, 817 F.2d 1105, 1107 (4th Cir.) (area's disposition toward criminal activity is articulable fact), cert. denied, 56 U.S.L.W. 3383 (1987). In addition, the officers were attempting to identify an individual who had sold drugs to federal officers in that area the previous day. The officers first observed Francois standing on a street corner, a common practice for area drug sellers, and Francois moved away when he saw the officers approach. When the officers approached him a second time, Francois covered his face with a handkerchief, possibly in an attempt to conceal his features. Finally, and perhaps most significantly, when Officer Buracker asked Francois his name, Francois immediately took flight. See Chesternut, 486 U.S. at 576 (Kennedy, J., concurring) (respondent's unprovoked flight gave police ample cause to stop him); United States v. Crittendon, 883 F.2d 326, 328 (4th Cir.1989) (suspect's immediate flight after encountering officers can create reasonable suspicion); United States v. Haye, 825 F.2d 32, 34-35 (4th Cir.1987) (same). Thus, Buracker's investigative stop of Francois was constitutionally permissible.
 
 
 10
 Similarly, the officer's retrieval of the cocaine from Francois' pocket was the result of an acceptable protective pat down and search for weapons. If an officer "has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose." Adams v. Williams, 407 U.S. 143, 146 (1972). Officer Buracker observed Francois reach into his pocket several times during the pursuit. At the suppression hearing, Officer Buracker testified that another man he had arrested, who had exhibited the same motions into his pocket during a pursuit, produced a nine millimeter handgun. The officer only reached into Francois' pocket after first patting it down and feeling a lump. Francois argues that, because Buracker later admitted that he probably could tell that the lump was not a nine millimeter handgun, the intrusion into Francois' pocket was improper. Buracker's candid reflection, however, is a distinction without a difference. The issue is not whether Buracker had reason to believe Francois' pocket contained a nine millimeter handgun, but whether he had reason to believe Francois was armed. Given Francois' actions as he ran and the officer's previous experience, Buracker had reason to believe that the lump was any one of a number of weapons. The Constitution did not limit Buracker to asking questions and "tak[ing] the risk that the answer might be a bullet." Terry v. Ohio, 392 U.S. 1, 33 (1968).
 
 
 11
 After an overall review of the totality of the circumstances, we have no difficulty in concluding that the trial court was not clearly erroneous in deciding that Officer Buracker's investigative stop, pat down, and search of Francois was justified because Buracker had a reasonable suspicion, grounded in specific and articulable facts, that Francois was involved in criminal activity and might be armed and dangerous.
 
 
 12
 Francois also claims that the trial court erred in refusing to sever for trial the two counts of the indictment; that it erred in permitting West Virginia State Police Officer Deborah DiFalco to give expert testimony concerning the value of cocaine found on Francois and the amount of cocaine which is normally used by a user; that there was insufficient evidence to support the verdict; and that the district court erred in not granting his motion for a new trial.
 
 
 13
 We are of opinion that the district court did not abuse its discretion in refusing to sever the two counts for trial, for among other reasons, the offense were of the same or similar character, F.R.Cr.P. 8(a), and the defendant has not carried the burden of demonstrating a strong showing of prejudice. United States v. Goldman, 750 F.2d 1221, 1225 (4th Cir.1984).
 
 
 14
 We are also of opinion that the district court did not abuse its discretion in permitting the testimony of Officer DiFalco. Even if the point was preserved for appeal, which it probably was not, Officer DiFalco had been a state police officer for more than ten years and was a member of the Federal Narcotics Task Force. She had been involved in at least 100 drug arrests and numerous purchases of drugs, including crack cocaine. Her qualifications to give the testimony that she did on these facts were within the discretion of the district court, and we are of opinion it did not abuse its discretion.
 
 
 15
 We think there was sufficient evidence to support the verdict. The argument that there was insufficient evidence to establish an intent to distribute is belied by the fact that the crack in Francois' possession was worth approximately $1,300-$1,400, but the amount involved in an ordinary sale ranged from $20-$100. This evidence would have permitted the jury to infer that Francois did not possess the drug solely for his own use but intended to sell or otherwise distribute it.
 
 
 16
 We are also of opinion there was no error in the failure of the district court to grant a new trial. The argument is that the accumulation of the errors we have just mentioned as claimed was a sufficient reason to grant the motion. Since we have determined those assignments of error are without merit, however, the motion was likewise without merit.
 
 
 17
 The judgment of the district court is accordingly
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 In addition to the charge arising out of the facts set forth above, the grand jury also charged that Francois possessed cocaine with intent to distribute on another occasion. Because the trial jury acquitted Francois on count two, the statement of facts relates only to the first count
 
 
 [2]
 Because we conclude that a reasonable, articulable suspicion of criminal activity existed at the outset of Officer Buracker's pursuit, it is unnecessary to determine the exact point at which Buracker's conduct accomplished a "seizure" under the fourth amendment. We therefore express no opinion concerning whether and under what circumstances police pursuit may constitute a seizure. See Michigan v. Chesternut, 486 U.S. 567, 575-76, n.9, (determining that police "chase" in issue did not constitute seizure and declining to determine whether pursuit ever could amount to seizure); id. at 576 (Kennedy, J., concurring) (police pursuit or chase does not constitute seizure until it achieves restraining effect)