914 F.2d 250
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Rickey WILLIAMS, a/k/a Rickey Johnson, a/k/a Rickey Nelson,
Defendant-Appellant.
 No. 89-5049.
 United States Court of Appeals, Fourth Circuit.
 Submitted Aug. 28, 1990.
Decided Aug. 9, 1990.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. J. Calvitt Clarke, Jr., District Judge. (CR-88-109-N)
 Chris A. Christie, J. Roger Griffin, Jr., Christie, Held & Kantor, Virginia Beach, Virginia, for appellant.
 Henry E. Hudson, United States Attorney, Charles D. Griffith, Jr., Assistant United States Attorney, Norfolk, Virginia, for appellee.
 E.D.Va.
 AFFIRMED.
 Before WIDENER, CHAPMAN and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Rickey Williams was convicted in a trial to the court without a jury of possession with intent to distribute cocaine in violation of 21 U.S.C. Sec. 841(a)(1), and interstate travel in aid of racketeering, in violation of 18 U.S.C. Sec. 1952(a)(3). The only question raised on appeal is the validity of a stop, arrest and search at the Norfolk Airport. We affirm.
 
 
 2
 On May 20, 1988, local detectives Downing and Mills were working as a part of a drug enforcement task force at the Norfolk International Airport. At about 8:30 that evening, they saw Williams deplane from a flight from New York. They noticed a "very pronounced" bulge in his "crotch area," "the lower abdomen area," and commenced surveillance of him. Williams made an adjustment to his clothing in the crotch area and then went into the bathroom, where he was followed by Mills. Williams went into one of the stalls and while Mills could only see his feet, he could see Williams' shadow moving and could hear Williams moving around. Williams apparently did not use the commode, at least there was no flush, and emerged from the stall and left the bathroom. Williams then went to the airport lobby, where he was followed by the officers. In the lobby, Williams made a telephone call, after which the officers approached him. Downing asked if he could speak with Williams, and Williams said "Yes." Downing identified himself as a police officer, and showed his credentials. Downing asked if he had just flown into the airport and Williams denied it. Downing then asked if Williams had any identification, and Williams said no. At this point Williams removed from his pocket some U.S. currency as well as an airline ticket. Downing asked if he could see the ticket, and Williams handed it to him. The ticket was a one-way fare from La Guardia under the name of Rickey Johnson. Williams denied the ticket was his and told the officers he had found it on the floor. Downing returned the ticket to Williams, who, when asked if he were from that area, stated that he was from Young's Park. Williams was then advised by Downing that the officers were narcotics officers and asked if they could conduct a quick search of his person. Williams gave his consent to the search, asking where the officers wanted to conduct it. Downing told Williams they would go into the bathroom a few yards away, but prior to reaching the door, Williams broke and ran, pursued by Downing. Mills remained behind to see if a large trash receptacle which Williams had overturned contained anything Williams might have discarded. Williams climbed a railing which surrounded an escalator going down and dropped one story. He then ran out the door of the terminal. Downing, at this time, had been joined in his pursuit by an off-duty airport police officer. The chase crossed a parking lot, at which point Williams jumped or climbed the fence into a compound area. At that point, Curren, the off-duty officer, told Downing that he had seen Williams stuff something into the chassis of a car. Downing found the package which Williams had stuffed into the car. The package turned out to be cocaine. Shortly after that, Williams climbed a barbed wire fence alongside a runway of the airport, where he was arrested by Mills and two airport police officers. Another bag of cocaine was found on Williams' person.
 
 
 3
 On these facts, the district court found that Williams had agreed to a Terry stop, i.e., he agreed to stop and talk to the officers. The district court also found, on the basis of this evidence, that Williams voluntarily agreed to a search of his person and that the officers did not threaten Williams or box him in so that he would feel threatened. The district court further found that after Williams started to run, the officers had a right to pursue him and arrest him and take the bag of cocaine from Williams' person.
 
 
 4
 The findings that Williams agreed to stop and talk to the officers, agreed to have his body searched, and was not boxed in or threatened are largely findings of fact, and we are of opinion they are not clearly erroneous. When Williams started to run, of course the officers had a right to stop and arrest him. The evidence in this case, indeed, is at least as favorable to the government as that in two cases on similar facts involving the running of one being questioned, which control here, and in which stops and searches were approved over objection. These are: United States v. Crittendon, 883 F.2d 326 (4th Cir.1989), and United States v. Haye, 825 F.2d 32 (4th Cir.1987).
 
 
 5
 We are thus of opinion the stop of Williams and the ensuing arrest and search were free from valid objection.
 
 The judgment of conviction is accordingly
 
 6
 AFFIRMED.*
 
 
 
 *
 We have decided this case on the record and briefs without oral argument. The dispositive set of issues has been recently authoritatively decided