968 F.2d 1224
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Michael L. AVILA, Defendant-Appellant.
 No. 91-4205.
 United States Court of Appeals, Tenth Circuit.
 July 13, 1992.
 
 1
 Before LOGAN and HOLLOWAY, Circuit Judges, and CONWAY*, District Judge.
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 JOHN E. CONWAY, District Judge, Sitting by Designation.
 
 
 4
 Defendant Michael L. Avila appeals his conviction on stipulated facts of knowingly and unlawfully possessing, with the intent to distribute, a quantity of cocaine, in violation of 21 U.S.C. § 841(a)(1). On appeal, Mr. Avila contends that the trial court erred in denying his motion to suppress. We affirm.
 
 
 5
 At approximately 7:00 a.m. on August 28, 1990, Mr. Avila arrived in Salt Lake City aboard a Greyhound bus en route from southern California. Only Mr. Avila and one other passenger departed the bus in Salt Lake City. Officers Michael W. Rufener and Sterling B. Provost of the Utah Department of Public Safety were at the bus station for the purpose of detecting and arresting persons engaged in transporting narcotics. Both officers were dressed in plain clothes. Mr. Avila was carrying a black bag. According to the testimony of Officer Provost, the defendant looked directly at the officers as he exited from the bus, and his eyes widened, as if he realized that the officers were undercover agents. Mr. Avila then walked briskly through the bus depot. He did not stop to claim any luggage. While walking through the depot, the defendant repeatedly looked over his shoulder "in jerking motions" in the direction of the police officers. As soon as he exited the depot, Mr. Avila entered the passenger's side of the front seat of a taxi cab and locked the door. Officer Rufener, who had followed Mr. Avila through the depot, knocked on the passenger side window. Mr. Avila then reached in front of the driver, shifted the cab into drive, and motioned to the driver to leave. At this moment Officer Rufener produced his identification and indicated to the cab driver to halt. Officer Rufener then asked Mr. Avila to get out of the cab.
 
 
 6
 The defendant exited the cab, but left the bag he had been carrying in the car. Officer Rufener asked him to retrieve the bag, and Mr. Avila did as instructed, placing the bag next to himself on the sidewalk. In response to questioning, the defendant told Officer Rufener that he had travelled to Salt Lake City to visit his cousin; however, he could identify neither the name of his cousin or the location of his cousin's residence. Mr. Avila then told Officer Rufener that the bag belonged to his cousin. Officer Rufener asked the defendant if he was carrying any drugs or large amounts of money. According to Officer Rufener, Mr. Avila became visibly more nervous, and Officer Rufener asked him for permission to search the bag. Mr. Avila reiterated that it was not his bag, but nevertheless gave permission to search. Inside the bag the officers discovered a cylindrical shaped package wrapped in brown paper which, based on their experience, they recognized as a type of packaging sometimes used to ship narcotics. The officers opened the package and discovered that it contained what they believed to be cocaine. Mr. Avila was placed under arrest. A subsequent field test confirmed that the substance was cocaine.
 
 
 7
 Mr. Avila filed a motion to suppress the cocaine. The district judge referred the matter to a magistrate judge to hear initial pretrial motions. The defendant's motion to suppress was extensively briefed. After conducting an evidentiary hearing the magistrate judge issued an exhaustive Recommendation and Report in which he recommended that the defendant's motion to suppress be denied. The district judge, after additional briefing, subsequently adopted the magistrate judge's Recommendation and Report in all material respects, and Mr. Avila's motion to suppress was denied.
 
 
 8
 The defendant raises three issues on appeal. First, he contends that the officers lacked reasonable suspicion to seize him. Second, he argues that he did not voluntarily consent to the search of the black bag he was carrying when the officers stopped him. Finally, Mr. Avila claims that the officers violated his Fourth Amendment rights when they conducted a warrantless search of the container found within the black bag. "In reviewing the denial of a defendant's motion to suppress evidence, we accept the trial court's findings of fact, unless clearly erroneous, and consider all the evidence in a light most favorable to the Government. However, ultimate determinations of reasonableness under the Fourth Amendment, and other questions of law, are reviewed de novo." United States v. Evans, 937 F.2d 1534, 1536 (10th Cir.1991).
 
 
 9
 Mr. Avila contends that the officers unlawfully detained him when they instructed the taxi cab driver to halt and ordered the defendant out of the automobile. We have previously identified three categories of citizen encounters with law enforcement officials.
 
 
 10
 The first, a consensual encounter, involves a citizen's voluntary cooperation with an official's non-coercive questioning. A consensual encounter is not a seizure within the meaning of the fourth amendment. The second, an investigative detention or "Terry stop," is a seizure within the scope of the fourth amendment that is justified when specific and articulable facts and rational inferences drawn from those facts give rise to a reasonable suspicion a person has or is committing a crime. The third category, an arrest, is also a fourth amendment seizure that is characterized by a highly intrusive or lengthy detention and requires probable cause the arrestee has or is committing an crime.
 
 
 11
 United States v. Werking, 915 F.2d 1404, 1407 (10th Cir.1990). The encounter between Mr. Avila and the officers began as an investigative detention. As noted above, a person may be detained in this manner if specific and articulable facts and rational inferences drawn from those facts engender a reasonable suspicion that an offense has been or is being committed.
 
 
 12
 Mr. Avila arrived in Salt Lake City on a bus that originated in southern California.[1] He exited the bus quickly and, according to Officer Provost, his eyes widened when he saw the two plain-clothed officers. Thereafter Mr. Avila walked through the bus station at a pace described by the officers as just below a run, repeatedly looking over his shoulder in jerking motions at the officers. Officer Rufener testified that the defendant entered the first available taxi cab and immediately locked the passenger door. Most significantly, when Officer Rufener knocked on the passenger window, Mr. Avila reached for the car's gear shift and attempted to move it into the drive position. We hold that under these facts Officer Rufener had a reasonable suspicion that the defendant was engaged in criminal activity.
 
 
 13
 The defendant's behavior after he reached the taxi cab supported the resulting investigative detention. It is unusual for an individual to quickly exit a bus and practically run through the bus station to the first available taxi cab, while all the time looking over his shoulder toward two strangers. Neverthless, it is unlikely that this behavior alone would have justified an involuntary investigative detention.[2] However, when that individual then reacts to the presence of a stranger by locking his door and attempting to shift the gear shifter of the car in which he is a passenger into drive, the totality of the circumstances supports an experienced officer's suspicion that the individual is engaged in criminal activity. Cf. United States v. Haye, 825 F.2d 32, 35 (4th Cir.1987); and United States v. Ceballos, 719 F.Supp. 119, 125 (E.D.N.Y.1989).
 
 
 14
 Mr. Avila next contends that he did not voluntarily consent to the search of the black bag. "The voluntariness of consent is a question of fact to be determined from the totality of the circumstances." United States v. Evans, supra, 937 F.2d at 1538. We apply a three-tiered analysis to determine whether consent was voluntary:
 
 
 15
 First, there must be clear and positive testimony that the consent was unequivocal and specific, and freely and intelligently given. Second, the Government must establish that consent was given without duress or coercion. Finally, we evaluate the first two standards with the traditional indulgence of the courts against a presumption of waiver of constitutional rights.
 
 
 16
 United States v. Corral, 899 F.2d 991, 994 (10th Cir.1990) (quoting United States v. Recalde, 761 F.2d 1448, 1453 (10th Cir.1985) (citations omitted)).
 
 
 17
 The district court concluded, and the record clearly demonstrates, that Mr. Avila gave a voluntary and unequivocal consent to the search of the black bag. Both officers asked the defendant if they could search the bag. Mr. Avila, although denying that the bag belonged to him, unambiguously responded in the affirmative. There is no evidence that the defendant was pressured or threatened. Mr. Avila argues, however, that his consent was tainted by the allegedly illegal detention directly preceding the search. Since we have concluded that the initial detention of the defendant was supported by reasonable suspicion, the defendant's taint argument is obviously without merit.
 
 
 18
 Finally, Mr. Avila argues that his Fourth Amendment rights were violated when the officers opened the container they found inside the bag without first obtaining a search warrant. Because the officers acted within the scope of Mr. Avila's consent when they opened the cylindrical object found within the black bag, we reject the defendant's argument that the officer's conducted an unlawful warrantless search of that object.
 
 
 19
 The scope of a consent search is limited by the breadth of the consent given. See United States v. Gay, 774 F.2d 368, 377 (10th Cir.1985). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness--what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno, --- U.S. ----, 111 S.Ct. 1801, 1803-04, 114 L.Ed.2d 297 (1991). "Whether a search remains within the boundaries of the consent is a question of fact to be determined from the totality of the circumstances, and a trial court's findings will be upheld unless they are clearly erroneous." United States v. Pena, 920 F.2d 1509, 1514 (10th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2802, 115 L.Ed.2d 975 (1991).
 
 
 20
 In Florida v. Jimeno the Supreme Court ruled that a suspect's general consent to a search of his car included consent to open and examine a paper bag lying on the floor of that car.
 
 
 21
 The scope of a search is generally defined by its expressed object. In this case, the terms of the search's authorization were simple. Respondent granted Officer Trujillo permission to search his car, and did not place any explicit limitation on the scope of the search. Trujillo had informed respondent that he believed respondent was carrying narcotics, and that he would be looking for narcotics in the car. We think it was objectively reasonable for the police to conclude that the general consent to search respondent's car included consent to search containers within that car which might bear drugs. A reasonable person may be expected to know that narcotics are generally carried in some form of a container.... The authorization to search in this case, therefore, extended beyond the surfaces of the car's interior to the paper bag lying on the car's floor.
 
 
 22
 Florida v. Jimeno, supra, 111 S.Ct. at 1804.
 
 
 23
 Officer Rufener asked Mr. Avila if he was carrying either narcotics or large amounts of money before he asked for consent to search the bag. Therefore, like the defendant in Jimeno, the defendant here was aware of the object of the search. The testimony before the trial court demonstrates that Mr. Avila did not attempt to limit the scope of his consent at any time during the search of the bag. We have previously held that "failure to object to the continuation of the search under these circumstances may be considered an indication that the search was within the scope of the consent." United States v. Espinosa, 782 F.2d 888, 892 (10th Cir.1986); see also, United States v. Dewitt, 946 F.2d 1497, 1501 (10th Cir.1991), cert. denied, Rison v. United States, --- U.S. ----, 112 S.Ct. 1233, 117 L.Ed.2d 467 (1992); and United States v. Pena, supra, 920 F.2d at 1514-15. Under Jimeno, the officers were justified in believing that Avila's consent included consent to search the brown cylindrical object.
 
 
 24
 AFFIRMED.
 
 
 
 *
 The Honorable John E. Conway, United States District Judge for the District of New Mexico, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Neither officer clearly identified the specific city of origin. Nevertheless, the district judge took judicial notice of the fact that much of the narcotics entering Utah originates from southern California
 
 
 [2]
 Notably, there is nothing in this case to indicate that the officers initially intended to initiate anything other than a consensual encounter. In that event, Mr. Avila could have declined to answer questions and simply walked away. Cf. Florida v. Royer, 460 U.S. 491, 497-98, 103 S.Ct. 1319, 1323-24, 70 L.Ed.2d 229 (1983)