**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-4011**

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

PETER KENDALL SMITH,

                    Defendant - Appellant.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   Catherine C. Blake, District Judge.
(1:06-cr-00063-CCB-1)

Argued:  May 13, 2010                    Decided:  July 7, 2010

Before DUNCAN and KEENAN, Circuit Judges, and Arthur L. ALARCÓN,
Senior United States Circuit Judge for the Ninth Circuit,
sitting by designation.

Affirmed by unpublished opinion.   Judge Alarcón wrote the
opinion in which Judge Duncan and Judge Keenan joined.

**ARGUED:** William A. Mitchell, Jr., BRENNAN, SULLIVAN & MCKENNA,
LLP, Greenbelt, Maryland, for Appellant.   Michael Clayton
Hanlon, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore,
Maryland, for Appellee. **ON BRIEF:** Timothy J. Sullivan, Brett J.
Cook, BRENNAN, SULLIVAN & MCKENNA, LLP, Greenbelt, Maryland, for
Appellant.    Rod J. Rosenstein, United States Attorney,
Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

ALARCÓN, Senior Circuit Judge:

Peter Kendall Smith appeals from the order denying his motion to suppress evidence recovered during a search incident to his arrest on October 22, 2005. We affirm because we conclude that the district court did not clearly err in denying the suppression motion. The officers had reasonable suspicion to stop and question Smith, and probable cause to arrest as well as to search him when he assaulted the officers to prevent a lawful detention.

I

A

On October 22, 2005, Officers Matthew Sammons and Corey Hurst of the Salisbury Police Department were on patrol in the Church Street area of Salisbury, Maryland.[1] They were in uniform and driving a marked police car. The officers were aware that the Church Street area is known as a high crime area. The police dispatcher announced over the police radio that an anonymous 9-1-1 caller had reported a fight involving a handgun near Church and Anne Streets.

---

[1] The facts summarized here are taken from the testimony provided by Officers Sammons and Hurst at the suppression hearing.

Officers Sammons and Hurst were a few blocks away from the reported location of the fight when they received the radio dispatch. They observed an adult male and two juveniles running toward the police vehicle. The three individuals slowed down to a fast walk as they approached the police car. They looked straight ahead without making eye contact with the police officers.

The officers turned their car around and pulled up next to the three individuals. They got out of the car and went to question Smith and his two companions. Officer Sammons approached Smith from the front. Officer Hurst walked around the back of the car and approached the three males from the side.

Officer Sammons told Smith that a fight, possibly involving a handgun, had been reported in the area and he sought any information Smith might have about it. Both officers observed that one of the three individuals, Brandon Curtis, was shoeless. Officer Hurst noticed that Brandon's left eye was red and beginning to swell.

Officer Sammons asked Smith if he was carrying anything illegal. Officer Sammons testified at the suppression hearing that he could not remember Smith's response. Officer Hurst asked Brandon what had happened to his shoes and his eye. Brandon explained that he had been in a fight and had stepped

3

out of his shoes. Officer Sammons advised Smith that he was going to pat him down and reached out toward him. Smith turned and "shuffle-stepped" away. Both officers grabbed Smith to prevent him from fleeing and a struggle ensued.

During the struggle, Smith struck both officers. Officer Hurst told Brandon and Byron Curtis, the second juvenile who was with Smith, to leave the area. Byron left the scene. Brandon remained and yelled at the officers during their struggle with Smith. Officer Sammons sprayed Smith with a strong pepper spray. The officers brought Smith under control, handcuffed him, and informed him that he was under arrest.

Officer Hurst searched Smith's front pockets and found several rocks of cocaine. Officer Sammons retrieved a handgun from Smith's back pocket.

B

Smith was indicted on February 15, 2006, for: felony possession of a firearm pursuant to 18 U.S.C. § 922(g)(1); possession of 5 grams or more of rock cocaine with intent to distribute pursuant to 21 U.S.C. § 841(a)(1), (b)(1)(B); and, possession of a firearm in furtherance of a drug trafficking crime pursuant to 18 U.S.C. § 924(c)(1).

On April 21, 2006, Smith filed a motion to suppress the handgun and the cocaine recovered during the search incident to his arrest. On August 24, 2006, the district court held an

4

evidentiary hearing on the motion to suppress. Officer Sammons and Officer Hurst testified that they had reasonable suspicion to perform a Terry stop based upon their collective knowledge: the 9-1-1 call, the fact that the three individuals were observed running away from the disturbance and slowed when they saw the police car, they made no eye contact with the officers as they passed, as well as the fact that Brandon was wearing socks without shoes and had a swollen eye.

Brandon and Byron testified that they did not slow their pace when they saw the officers and that the officers did not try to ask any questions upon exiting their vehicle. Instead, the officers immediately went for Smith, who resisted detention. The district court credited the testimony of the officers over that of Brandon and Byron and denied the motion to suppress.

On December 16, 2008, Smith pleaded guilty to felony possession of a weapon. The Government dismissed the other two counts in the indictment. His plea was conditioned upon the outcome of his appeal from the district court's denial of his motion to suppress. Smith was sentenced to 120 months in prison. He filed a timely appeal from the district court's order denying his motion to suppress the evidence obtained during the search incident to his arrest. We have jurisdiction under 28 U.S.C. § 1291.

5

In its dismissal of the motion to suppress, the district court concluded that "the officer[s] had reasonable suspicion for a Terry stop after Mr. Smith turned to flee, and the officer's physical contact with Mr. Smith did not elevate the Terry stop to an arrest." (District Court Order dated September 20, 2006) (internal citations omitted).

Smith argues that the district court erred in determining that the officers had reasonable suspicion to stop him and his companions. In reviewing the denial of a motion to suppress, this Court reviews a district court's findings for clear error and its legal conclusions de novo. United States v. Perkins, 363 F.3d 317, 320 (4th Cir. 2004). The evidence is construed in the light most favorable to the Government. Id.

In Terry v. Ohio, 392 U.S. 1 (1968), the Supreme Court held that

> where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to

6

> assault him.  Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken.

Id. at 30-31.

An officer's decision to detain a person must be based on more than just an "inchoate and unparticularized hunch."  Id. at 27 (internal quotations omitted).  The officer must be able to offer "some minimal level of objective justification for making the stop."  United States v. Sokolow, 490 U.S. 1, 7 (1989) (internal quotation marks omitted).  "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity."  United States v. Cortez, 449 U.S. 411, 417 (1981).  Two elements must be satisfied in evaluating whether reasonable particularized suspicion exists to conduct a Terry stop: 1) "the assessment must be based upon [a totality of] the circumstances;" and 2) the circumstances together "raise a suspicion that that particular individual being stopped is engaged in wrongdoing."  Id. at 418.  The basis for an officer's reasonable suspicion "can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the [stop]."  United States v. Pitt, 382 F.2d 322, 324 (4th Cir. 1967).

The Supreme Court has articulated the factors that may be weighed in considering the totality of the circumstances to determine whether reasonable suspicion exists. These factors include: whether the area is a high crime area, Adams v. Williams, 407 U.S. 143, 147 (1972); whether an individual exhibits evasive behavior, United States v. Brignoni-Ponce, 422 U.S. 873, 885 (1975); and, whether there is unprovoked flight,[2] Illinois v. Wardlow, 528 U.S. 119, 124-25 (2000). Any one of these factors may not suffice to establish reasonable suspicion. It is "the totality of the circumstances -- the whole picture -- [which] must be taken into account." Cortez, 449 U.S. at 417.

Smith contends that the elements considered by the district court to support reasonable suspicion are insufficient. He argues that an anonymous 9-1-1 tip cannot be relied upon. He also asserts that there were no bulges in their clothing and they did not behave in any way that might have indicated that

---

[2] While an "individual has a right to ignore the police and go about his business [and a] refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure, . . . unprovoked flight is simply not a mere refusal to cooperate . . . [and] is not going about one's business; in fact, it is just the opposite." Wardlow, 528 U.S. at 125 (internal quotation marks and citations omitted). See also United States v. Haye, 825 F.2d 32, 34 (4th Cir. 1987) (Defendants, instead of declining to answer questions and walking away, panicked and fled, giving officers "reasonable suspicion for a brief, involuntary, investigative stop.")

8

they were carrying weapons. Smith further argues that "[a] group of men walking at a fast pace in a high crime neighborhood near the location of a reported fight, who slow their pace and do not meet the gaze of the police upon seeing them is not sufficient to justify a Terry stop." Appellant's Brief at 16.

Terry "precludes this sort of divide-and-conquer analysis." United States v. Arvizu, 534 U.S. 266, 274 (2002). Reasonable articulable suspicion of "ongoing criminal activity" is measured by a totality of the circumstances. Sokolow, 490 U.S. at 8.

For example, in Florida v. J.L., 529 U.S. 266 (2000), the Supreme Court held that the police did not have reasonable suspicion based solely on an anonymous tip to the police. Id. at 268 ("[A]n anonymous tip that a person is carrying a gun[], without more, [is in]sufficient to justify a police officer's stop and frisk of that person."). Here, the officers based their suspicions on the totality of the circumstances, including the anonymous tip. Similarly, whether someone looks at an officer or avoids looking at an officer may not be sufficient alone, but when considered with other factors may establish reasonable suspicion for a stop. See Arvizu, 534 U.S. at 276 (A driver's avoidance of eye contact with an officer was one of several factors that established reasonable suspicion to stop the vehicle).

9

Here, in evaluating whether the totality of the circumstances created reasonable suspicion, the district court credited the testimony of the officers at the suppression hearing. "When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands [great] deference to the trial court's findings." Anderson v. Bessemer City, 470 U.S. 564, 575 (1985). "[T]he reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6). The district court did not clearly err in finding that the officers had reasonable suspicion to detain Smith.

B

Smith also contends that the officers lacked probable cause to arrest and search him after he tried to walk away from the officers' attempt to detain and frisk him. We disagree. As discussed above, the officers had a right to detain him and pat him down for weapons based on their reasonable suspicion.

When Smith resisted and struck both officers, they had probable cause to arrest him for the crime of assault. Police officers are entitled to use force in order to effectuate a Terry stop. See Graham v. Connor, 490 U.S. 386, 396 (1989)("[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of

10

physical coercion or threat thereof to effect it."); <u>Adams</u>, 407 U.S. at 146 ("So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose."). Accordingly, we are persuaded that the officers had probable cause to arrest and search Smith.

## Conclusion

Accordingly we AFFIRM the denial of Smith's motion to suppress the evidence obtained during the search incident to his arrest.

<u>AFFIRMED</u>

11