**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4487**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RODERICK DELON LEWIS,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Florence. R. Bryan Harwell, Chief District Judge.  (4:17-cr-00887-RBH-1)

Argued:  October 30, 2019                           Decided:  December 26, 2019

Before AGEE, THACKER and QUATTLEBAUM, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:**  Kimberly Harvey Albro, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant.  Everett E. McMillian, OFFICE OF THE UNITED STATES ATTORNEY, Florence, South Carolina, for Appellee.  **ON BRIEF:**  Sherri A. Lydon, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Roderick Delon Lewis ("Appellant") moved to suppress evidence of a firearm seized incident to his investigatory detention. Appellant argued that this detention violated his Fourth Amendment right and the firearm seized should therefore be suppressed. The district court denied the motion, concluding that the detaining officer's reasonable suspicion supported the detention.

At the time of his encounter with Appellant, the officer in question knew an arrest warrant had been issued for an individual with Appellant's last name, that the warrant was for assault, and that Appellant had a reputation as a neighborhood bully. As a result, when the officer observed Appellant in the neighborhood, the officer approached him and mentioned the arrest warrant, at which point Appellant fled. Under the totality of the circumstances, these facts supported the officer's reasonable suspicion to detain Appellant.

Therefore, we affirm.

I.

While leaving a staff meeting on the morning of June 12, 2017, Sergeant Matthew Townsend ("Sergeant Townsend") of the Dillon, South Carolina police department overheard coworkers discussing an arrest warrant charging assault that had recently been issued for someone with the last name of "Lewis." Later that day, Sergeant Townsend was filling his patrol car's gas tank when he noticed Appellant walk past. Sergeant Townsend had previously interacted with both Appellant and Appellant's brother, who share the last name "Lewis." Sergeant Townsend was aware that Appellant was known as a

"neighborhood bully." J.A. 33.[1] When Sergeant Townsend saw Appellant walking down the street, he radioed dispatch to identify the full name on the "Lewis" warrant. Though Sergeant Townsend had yet to receive an answer from dispatch, he followed Appellant. Sergeant Townsend was alone in his patrol car and Appellant was on foot.

When Sergeant Townsend caught up with him, Appellant was nearing the front door to the home Appellant shared with his girlfriend. According to Sergeant Townsend, he first rolled his car window down and said, "Hey, man, let me talk to you for a minute." J.A. 37. As Sergeant Townsend then exited his car, Appellant replied, "For what?" *Id.* At this point, Sergeant Townsend recalls he "was probably in [Appellant's] yard." *Id.* at 59. Sergeant Townsend told Appellant, "I may have a warrant on you," at which point, according to Sergeant Townsend, Appellant turned and ran from one side of the house around to the other side. *Id.* at 37.

For his part, Appellant testified that he was approaching his front door when Sergeant Townsend pulled up in his patrol car. According to Appellant, Sergeant Townsend "pulled up in the yard, got out of the vehicle, [and] told [him] to turn around and put [his] hands behind [his] back . . . [because he] was under arrest." J.A. 66. Appellant further attested that he demanded to know why he was under arrest, and when Sergeant Townsend refused to explain, Appellant turned to walk in the door of his residence. At that point, per Appellant, Sergeant Townsend reached to grab him, so Appellant pulled away and ran. Appellant explained that he ran when Sergeant Townsend tried stopping

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

him from continuing into his house because he did not believe Sergeant Townsend had the authority to arrest him. Appellant said he believed he had the right to leave because Sergeant Townsend never told him why he was under arrest.

In both Appellant's and Sergeant Townsend's versions of the incident, Appellant ran from the area near his front door to the other side of the house. Appellant then attempted to climb over a chain-link fence near the side of the house, but Sergeant Townsend grabbed him and wrestled him to the ground. During the struggle, Sergeant Townsend saw a black object -- later determined to be a firearm -- fall to the ground.

After arresting Appellant, Sergeant Townsend learned that the warrant he heard being discussed that morning had in fact been for Appellant's brother and not Appellant. However, Sergeant Townsend discovered there were multiple outstanding arrest warrants for Appellant on narcotics and firearm charges.

As a result of this encounter, Appellant was indicted on a single count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2)(2012).[2] Appellant subsequently filed a motion to suppress the gun evidence. Both Sergeant

---

[2] 18 U.S.C § 922(g)(1) provides, "[it] shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

18 U.S.C. § 924(a)(2) provides, in relevant part, "[w]hoever knowingly violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years or both."

Townsend and Appellant testified at the suppression hearing. The substance of their testimony is detailed above.

The district court denied Appellant's motion to suppress. Having determined that the initial conversation between Appellant and Sergeant Townsend was consensual, the court concluded that a seizure only occurred when Sergeant Townsend pulled Appellant from the fence. By that time, the district court explained, Appellant's "flight at the mention of the word warrant [had] created reasonable suspicion for . . . [Sergeant Townsend] to pursue [Appellant] and detain him under *Terry* [*v. Ohio*, 392 U.S. 1 (1968)]." J.A. 133.

Appellant then pled guilty pursuant to a conditional plea agreement under which he remained able to appeal the district court's denial of his motion to suppress. Appellant filed a timely notice of appeal.

## II.

When evaluating the denial of a motion to suppress, we review legal issues de novo and factual findings for clear error. *United States v. Lull*, 824 F.3d 109, 114 (4th Cir. 2016). "In doing so, we must construe the evidence in the light most favorable to the prevailing party and give due weight to inferences drawn from those facts by resident judges and law enforcement officers." *Id.* at 114–15 (internal quotation marks omitted). "[A]s a general matter[,] determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." *Ornelas v. United States*, 517 U.S. 690, 699 (1996).

5

III.

A.

"The Fourth Amendment protects 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 585 (2018) (quoting U.S. Const. amend. IV). "A [Fourth Amendment] seizure of the person . . . occurs when, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Kaupp v. Texas*, 538 U.S. 626, 629 (2003) (internal quotation marks omitted).

Without a warrant supported by probable cause, a law enforcement officer may still briefly detain an individual for investigative purposes if the officer has reasonable suspicion that the individual has engaged in criminal activity or is presently engaged in criminal activity. *United States v. Hensley*, 469 U.S. 221, 227 (1985). To use reasonable suspicion to justify even a brief seizure for investigative purposes, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). In assessing whether reasonable suspicion existed, we evaluate "the facts available to the officer at the moment of the seizure." *Id.* at 21–22.

B.

Before the district court, Appellant asserted there was a lack of reasonable suspicion to justify Appellant's seizure. But on appeal, Appellant now argues that Sergeant

Townsend needed to have probable cause rather than reasonable suspicion because Appellant was within the curtilage of his home when he was seized.

Appellant did not raise his curtilage argument to the district court in the first instance in his motion to suppress, and we possess "a limited power to correct errors that were forfeited because [they were] not timely raised in district court." *United States v. Olano*, 507 U.S. 725, 731 (1993). Where an appellant raises an issue for the first time on appeal, we can review it applying a plain error standard. *See* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").

We may "remedy a forfeited error provided certain conditions are met." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016). On plain error review, we only "will correct an unpreserved error if (1) an error was made; (2) the error is plain; (3) the error affects substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Harris*, 890 F.3d 480, 491 (4th Cir. 2018) (quoting *United States v. Ramirez-Castillo*, 748 F.3d 205, 212 (4th Cir. 2014)). An error can be plain only based on settled law at the time of review by an appellate court. *United States v. Carthorne*, 878 F.3d 458, 464 (4th Cir. 2017).

Here, it is not apparent that Appellant was seized within the curtilage of his property. Appellant argues that Sergeant Townsend actually seized him during the initial encounter in the yard near his front door rather than at the fence line. But in either case, there is no plain statement of law announcing that a defendant's yard or an area near the fence line of his home must be considered curtilage. Curtilage determinations are fact-specific inquiries

and are heavily particularized to an individual case. *See United States v. Dunn*, 480 U.S. 294, 301 (1987) (explaining that curtilage doctrine does not provide "a finely tuned formula that, when mechanically applied, yields a 'correct' answer to all extent-of-curtilage questions"). Where, as here, we have yet to announce a clear-cut rule for that portion of a defendant's yard outside of its fence, we are unable to say on plain error review that the district court erred in failing to determine sua sponte that the seizure occurred on Appellant's curtilage. We are even less able to say that such an error is "clear under current law." *Olano*, 507 U.S. at 734. Therefore, we cannot conclude that the district court plainly erred in allowing reasonable suspicion to support the seizure in this case.

## C.

Curtilage issue aside, the district court's decision is based on the proposition that Sergeant Townsend had reasonable suspicion to justify his seizure of Appellant pursuant to *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

## 1.

Appellant first asks us to evaluate the district court's conclusion that the initial encounter at his front door was not a Fourth Amendment seizure because it was consensual. This analysis is important because if the initial encounter *was* a seizure, it could be justified only by the facts and circumstances known to Sergeant Townsend at that time, which would not yet include Appellant's flight.

Seizure of a person occurs "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry*, 392 U.S. at 19 n.16. Where physical force was not used to restrain a person, we ask whether "in view

8

of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

We have identified a number of factors to consider when determining whether a seizure has occurred, including

> the number of police officers present during the encounter, whether they were in uniform or displayed their weapons, whether they touched the defendant, whether they attempted to block his departure or restrain his movement, whether the officers' questioning was non-threatening, and whether they treated the defendant as though they suspected him of illegal activity rather than treating the encounter as routine in nature.

*Santos v. Frederick Cty. Bd. of Comm'rs*, 725 F.3d 451, 461 (4th Cir. 2013) (quoting *United States v. Jones*, 678 F.3d 293, 299–300 (4th Cir. 2012)). "A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned." *Brendlin v. California*, 551 U.S. 249, 254 (2007).

Reviewing de novo, we hold that the district court correctly determined the initial encounter in this case was not a Fourth Amendment seizure. Presumably, Sergeant Townsend was armed and in uniform during the encounter, but he was alone, and taking the facts in the light most favorable to the Government, he did not draw his weapon or attempt to block Appellant's departure, restrain his movement, or touch him. Sergeant Townsend's mention of the warrant may have suggested he suspected Appellant of illegal activity, but his questioning was otherwise non-threatening. Further still, though not outcome determinative, Appellant's own assertion that he felt free to leave supports our conclusion. When asked during the motion to suppress hearing, Appellant indicated that

he believed he "had the right to just walk away" because Officer Townsend "didn't explain why . . . he was arresting [him] and that [Appellant] believed that [the officer] didn't have the authority to do it." J.A. 67.

In view of all the circumstances surrounding the incident in question, the initial encounter here is at most an attempted seizure -- one from which Appellant quickly fled. We therefore affirm the district court's conclusion that the relevant seizure for Fourth Amendment purposes occurred at the point at which Appellant ran to the side of the house and was seized at the fence line.

2.

Agreeing with the district court that the fence line confrontation constitutes the relevant seizure, we analyze de novo whether Sergeant Townsend possessed reasonable suspicion based on the facts known to him at that time. Pursuant to the standard given in *Terry*, an investigatory stop may be justified by an officer's "reasonable suspicion grounded in specific and articulable facts that the person he stopped has been or is about to be involved in a crime." *United States v. Moore*, 817 F.2d 1105, 1107 (4th Cir. 1987) (citations omitted). "An inchoate and unparticularized suspicion or hunch is not a permissible basis for a *Terry* stop." *United States v. Hernandez-Mendez*, 626 F.3d 203, 207 (4th Cir. 2010) (internal quotation marks omitted). "Courts assess reasonable suspicion by examining the totality of the circumstances in order to determine whether officers had a 'particularized and objective basis for suspecting the person stopped of criminal activity.'" *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)).

10

The "specific and articulable facts" here include Appellant's flight upon mention of the warrant combined with Sergeant Townsend's knowledge of the "Lewis" warrant, of Appellant as a "Lewis," and of Appellant's reputation as a neighborhood bully, given that the warrant was for assault. *Moore*, 817 F.2d at 1107. "[G]iv[ing] due weight to inferences drawn from [the] facts by . . . law enforcement officers," *United States v. Lull*, 824 F.3d 109, 114–15 (4th Cir. 2016), as we must, we hold that these circumstances taken together provided Sergeant Townsend with reasonable suspicion sufficient to detain Appellant.

In analogous circumstances, we have previously held that flight from consensual questioning can support reasonable suspicion. In *United States v. Haye*, officers sought to question several men carrying bags through an airport who "exhibited some of the characteristics of [a] drug courier profile." 825 F.2d 32, 33 (4th Cir. 1987). Once approached, we noted, the subjects "could have declined to answer questions and walked away." *Id.* at 34 (citing *Florida v. Royer*, 460 U.S. 491, 497–98 (1983)). "That was not the course that [they] took, however." *Id.* "Instead, there was sudden panic and precipitous flight." *Id.* We concluded that, though similarities to a drug courier profile alone might not support an investigatory detention, "all of the circumstances, including the flight, furnished reasonable suspicion" for an investigative stop. *Id.*

Similarly, here, given that Appellant's initial encounter with Sergeant Townsend was consensual, Appellant "could have declined to answer questions and walked away." *Haye*, 825 F.2d at 34. But "[i]nstead, there was sudden panic and precipitous flight" when Sergeant Townsend mentioned the warrant, which he had reason to believe could bear some connection to Appellant. *Id.* In context, flight and other evasive behaviors are proper

11

considerations to be taken into account under the totality of the circumstances. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (recognizing "nervous, evasive behavior" including unprovoked flight "is a pertinent factor in determining reasonable suspicion"). In combination with the other information available to Sergeant Townsend -- that is, that there was an outstanding warrant for assault for an individual in the area with the last name "Lewis," and Appellant, whose last name is "Lewis," was known as a neighborhood bully -- Appellant's sudden flight provided reasonable suspicion for Sergeant Townsend to detain him. Therefore, we hold that the district court did not err in failing to suppress evidence of the firearm recovered incident to this lawful detention.

IV.

For the reasons set forth herein, the district court's denial of the motion to suppress is

*AFFIRMED*.