**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Norman Delano MOORE,**
**Defendant-Appellant.**

No. 86–5620.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 9, 1987.

Decided May 5, 1987.

John Frank Hardaway, Columbia, S.C., on brief, for defendant-appellant.

John Robert Haley, Asst. U.S. Atty., Charleston, S.C., (Vinton D. Lide, U.S. Atty., Columbia, S.C., on brief), for plaintiff-appellee.

Before WIDENER and WILKINSON, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

WILKINSON, Circuit Judge:

We address here the validity of a frisk by a policeman who arrived at the scene of a crime in response to a burglar alarm and hence without a description of the perpetrator. The pat-down revealed a weapon, and defendant Norman Delano Moore was charged with possession of a firearm by a convicted felon. The district court denied his motion to suppress the weapon. Appellant then entered a conditional guilty plea, reserving his right to appeal under Fed.R. Crim.P. 11(a)(2), and received a two year sentence. He now appeals the district court's denial of his motion to suppress. We affirm.

## I.

The Baptist Education Center stands at the corner of Rutledge and Bogart Streets in Charleston, South Carolina. On March 31, 1984, at 11:43 p.m., the Charleston police dispatcher announced that the "silent" burglar alarm at the Baptist Center had sounded at the police station. Officer Christopher Smith was patrolling in his squad car about four blocks north of the Center when he heard the dispatcher's call. He responded immediately. Approaching the Center two or three minutes later, Officer Smith saw appellant Moore walking south, about 30 to 40 yards from the Center's Rutledge Street entrance. The area was otherwise deserted.

Smith drove behind appellant so he could see him in the squad car's headlights. He stepped out of his car and told appellant to stop and turn around. He informed Moore that he was responding to the Center's burglar alarm and that he intended to pat him down "for his safety as well as mine." After patting Moore around his waist and pants pockets, Smith felt a hard object that he thought was a handgun. He retrieved the gun from appellant's pocket and arrested him.

Appellant was charged with illegal possession of a handgun under 18 U.S.C. § 1202(a)(1). He moved to suppress the handgun, arguing that Smith's conduct violated his Fourth Amendment rights. The district court denied the motion, and Moore took this appeal.

## II.

This case presents a common situation in law enforcement. It involves a lone police officer who, minutes after responding to a dispatcher's call, encounters a suspect on a dark street. In this case, we think Officer Smith acted reasonably when he stopped and frisked appellant.

The Supreme Court, in *Adams v. Williams*, 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972), stated that "the Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." According to the Court, "it may be the essence of good police work" to maintain the status quo with a brief stop that allows the police officer to investigate further the possibility of criminal involve-

ment. *Id.* A brief investigative stop is permissible whenever the police officer has a reasonable suspicion grounded in specific and articulable facts that the person he stopped has been or is about to be involved in a crime. *United States v. Hensley,* 469 U.S. 221, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985); *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968).

Appellant asserts that he did nothing suspicious to warrant the stop and that he looked and acted as though he were a resident of the neighborhood. He also points out that he did not attempt to flee on Officer Smith's approach. While these factors, viewed in isolation, may point to appellant's innocence, "it must be rare indeed that an officer observes behavior consistent only with guilt and incapable of any innocent interpretation." *United States v. Price,* 599 F.2d 494, 502 (2d Cir.1979).

■ A combination of factors justify the stop. When the officer approached the site of the alarm, he saw appellant close to one of the entrances of the building. Only two or three minutes had elapsed since Smith first received the dispatcher's call. The call came late at night, and appellant was the only person in the vicinity. Moreover, appellant was moving away from the scene of the crime, though the silent nature of the alarm may have given him no cause to hurry. These circumstances in combination support a reasonable suspicion that appellant was involved in the break-in.

■ In addition, Smith had personally investigated numerous assaults, aggravated assaults, armed robberies, break-ins, and at least one murder during the three years that he patrolled the area. Appellant rightly asserts that the fact that someone was in a "high crime neighborhood" is not by itself enough to raise a reasonable suspicion. However, "an area's disposition toward criminal activity is an articulable fact." *United States v. Constantine,* 567 F.2d 266, 267 (4th Cir.1977). The district judge may properly consider the criminal propensity of the patrolman's beat as one of several factors that informs his finding that the stop was permissible.

■ Appellant argues finally that the stop was invalid because Officer Smith was not certain that any crime had actually occurred. A police officer, however, is not constitutionally required to be certain that a crime has occurred when he makes a stop. *Price,* 599 F.2d at 502. *See also Adams,* 407 U.S. at 147, 92 S.Ct. at 1924 (police need not personally witness the suspicious behavior that forms the basis for the stop); *United States v. Aldridge,* 719 F.2d 368, 372 (11th Cir.1983) (officer responding to a radio call that suspects were "fooling with vehicles" could stop three men where the officer was alone, the stop occurred in the early morning hours, and the officer reasonably believed the suspects were involved in criminal activity). The burglar alarm provided a reasonable basis for believing that a burglary had occurred at the Center. If the policeman were first required to verify all the circumstances of the crime, the opportunity to catch the criminal might be lost.

## III.

Appellant contends that even if the stop was permissible, the pat-down search of his person was not. According to appellant, the officer's information about the possible burglary was too sketchy to warrant a search, and the officer's intrusion should have been limited to questioning appellant. In fact, appellant contends that, even where police officers have reason to believe that a suspect is armed, they are required to ask questions before searching him.

■ We decline to impose any such requirement. An officer making a lawful investigatory stop may protect himself by conducting a search for concealed weapons whenever "he has reason to believe that the suspect is armed and dangerous." *Adams v. Williams,* 407 U.S. at 146, 92 S.Ct. at 1923; *United States v. Longmire,* 761 F.2d 411 (7th Cir.1985). A compulsory interval of questioning between the stop and frisk leaves law enforcement officers at risk; "such a limitation would be unsound and has not been followed by the Supreme Court or the lower courts." W. LaFave & J. Israel, Criminal Procedure 182

(1985). "There is no reason why an officer, rightfully but forcibly confronting a person suspected of a serious crime, should have to ask one question and take the risk that the answer might be a bullet." *Terry,* 392 U.S. at 33, 98 S.Ct. at 1886 (Harlan, J., concurring).

■ The circumstances surrounding the stop support the officer's belief that a further frisk for weapons was warranted. The hour was late, the street was dark, the officer was alone, and the suspected crime was a burglary, a felony that often involves the use of weapons.

Moreover, the intrusion here was limited. The officer patted down the outside of appellant's clothes at his waistline. He reached into appellant's pants pockets only after he felt the handgun. The duration of the search was a matter of seconds. The officer's only purpose in patting appellant down was, as he testified, to protect himself and appellant, and his actions were limited to that purpose. It is difficult to imagine a less intrusive search.

■ Appellant nonetheless contends that the stop and frisk were so intrusive that they amounted to an arrest without probable cause. He argues that, because he did not feel free to leave during the stop, he was in a custodial situation. The perception, however, that one is not free to leave is insufficient to convert a *Terry* stop into an arrest. A brief but complete restriction of liberty is valid under *Terry. United States v. Bautista,* 684 F.2d 1286, 1289 (9th Cir.1982). Courts have held that a lawful stop does not necessarily become a custodial arrest when circumstances cause police officers to draw their guns, *United States v. Perate,* 719 F.2d 706, 709 (4th Cir.1983), *United States v. Rickus,* 737 F.2d 360 (4th Cir.1984); use force or threats of force, *United States v. Doffin,* 791 F.2d 118 (8th Cir.1986); or handcuff suspects, *Bautista,* 684 F.2d at 1289. The officer's conduct in this case was more restrained and perfectly proper under the circumstances.

The judgment of the district court is

AFFIRMED.