929 F.2d 695
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Linwood JOHNSON, Defendant-Appellant.
 No. 90-5790.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 6, 1990.
Decided April 8, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Norman P. Ramsey, District Judge. (CR-89-266-R)
 Beth Mina Farber, Assistant Federal Public Defender, Baltimore, Md. (Argued), for appellant; Fred Warren Bennett, Federal Public Defender, Baltimore, Md., on brief. Geoffrey Robert Garinther, Assistant United States Attorney, Baltimore, Md. (Argued), for appellee; Breckinridge L. Willcox, United States Attorney, Baltimore, Md., on brief.
 D.Md.
 AFFIRMED.
 Before WILKINSON and NIEMEYER, Circuit Judges, and ROBERT R. MERHIGE, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Michael Linwood Johnson was convicted for possession of ammunition by a felon in violation of 18 U.S.C. Sec. 922(g)(1). On appeal he contends that (1) he was illegally stopped and frisked and the gun and ammunition found on him should have been suppressed; (2) he was denied a speedy trial; and (3) the district court erroneously admitted into evidence the gun found on him. Finding no reversible error, we affirm.
 
 I.
 
 2
 At about 11:30 p.m. on the night of April 3, 1989, Baltimore City Police Officer Terry Love was dispatched to investigate a report of an armed robbery in a high crime area in east Baltimore. The police dispatcher reported that the robbery was committed at 1619 Olive Street by two black men wearing black clothing. Once at the scene Officer Love and Officer Kline, who was already there, found neither the complainant nor anyone fitting the description of the alleged assailants. But about seven minutes later and about six to seven blocks away Officer Love spotted the defendant, Michael Johnson, who was the first and only man that Officer Love saw fitting the description given by the dispatcher. Johnson was black and wore black clothing. Officer Love pulled his squad car in front of Johnson to block his path, and upon exiting the squad car, Officer Love noticed that Johnson was sweating, shaking, and nervous. Believing that Johnson might be armed, Officer Love frisked him but found no weapons. Nevertheless he called for backup. Officer Quinter, who arrived in less than a minute, observed that Johnson was nervous and sweating and saw a bulge on the right side of his waistband. When Officer Quinter put his hand on the bulge, Johnson admitted that it was a gun. The gun, which was manufactured between 1882 and 1900, contained five rounds of ammunition. Johnson, who had a prior felony conviction, was charged and convicted of possession of ammunition by a convicted felon.
 
 II.
 
 3
 Johnson contends that Officer Love did not have a reasonable suspicion based on specific and articulable facts which would justify the stop and frisk and that the district court should have granted his motion to suppress the gun and ammunition. Johnson argues that "[t]he description of a black man in black clothing in that [predominantly black] area is equivalent to broadcasting a description of a white male in a business suit in the downtown Baltimore business district at noon. It is so general as to make a distinction based on specific and articulable facts impossible." Brief of Appellant at 25. He also contends that the district court made clearly erroneous findings of fact because it found that Officer Love 1) encountered Johnson "a few blocks" from the scene of the reported robbery instead of seven or eight blocks and 2) noticed Johnson was nervous before he stopped him rather than after. Johnson's counsel eloquently argued at oral argument that a ruling that Officer Love's stop and frisk of Johnson was reasonable would send a signal to residents of impoverished ethnic communities such as the one in which Johnson was arrested that they have a lower expectation of privacy than do residents of affluent white communities.
 
 
 4
 In reviewing the reasonableness of a stop and frisk the court must determine whether the police officer was able "to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio, 392 U.S. 1, 21 (1968). See also United States v. Crittendon, 883 F.2d 326, 328 (4th Cir.1989) (A police officer may "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot'.") (quoting United States v. Sokolow, --- U.S. ----, 109 S.Ct. 1581, 1585 (1989)). The presence of a reasonable suspicion "must be determined in light of the totality of the circumstances confronting a police officer including all information available to an officer and any reasonable inferences to be drawn at the time of the decision to stop a suspect." Id.
 
 
 5
 In United States v. Moore, 817 F.2d 1105 (4th Cir.), cert. denied, 484 U.S. 965 (1987), we were presented with facts similar to those in this case and we found that the stop and frisk was justified by a reasonable suspicion. The police officer in Moore, responding to a silent alarm at an educational center, saw the defendant walking about 30 or 40 yards from the center. Other than the defendant, no one else was in the area. Even though the officer had no description of an assailant, he stopped and frisked the defendant. Id. at 1106. We concluded that the totality of the circumstances justified the officer's stop and frisk of the defendant. He was near the area where the alarm was sounded a short time after and the defendant was the only person in the vicinity in a high crime area. Id. at 1107.
 
 
 6
 The noticeable distinction in the circumstances between Moore and this case is that in this case Johnson was first observed about seven minutes after the reported robbery and about six or seven blocks away, not 30 or 40 yards. Alone, that might be meaningful. Other circumstances that are present here, however, enhance the suspicion about Johnson. Officer Love had a general description of Johnson. While it might not be sufficiently distinguishing for use in all circumstances, Johnson was seen at 11:30 p.m. when no one else was in the area and only Johnson fit the general description. Moreover, when Officer Love first observed Johnson as he exited from his squad car, Johnson appeared to be sweating, shaking and nervous. In short, we agree with the district court that the totality of circumstances in this case reasonably warranted the stop and frisk.
 
 III.
 
 7
 Johnson also contends that the five-month delay in time from his arrest on April 3, 1989, to his arraignment on September 1, 1989, was undue and violated his Constitutional rights to a speedy trial and due process.
 
 
 8
 Johnson was arrested on April 3, 1989, and charged by the State of Maryland with possession of an unregistered handgun and being a felon in possession of a handgun. The state charges were later dismissed after a federal grand jury returned an indictment on May 18, 1989, charging Johnson with a violation of 18 U.S.C. Sec. 922(g)(1), which prohibits felons from possessing firearms. When it was recognized that the gun Johnson possessed may have been an antique and therefore exempt under the statute, the indictment was dismissed. A second indictment was returned on July 18, 1989, charging Johnson with possession of ammunition by a felon, a violation of 18 U.S.C. Sec. 922(g)(1). He was arraigned on that charge on September 1, 1989, approximately six weeks after the indictment was returned. After Johnson was first arrested in April 1989 he was released and remained free until his subsequent arrest following the issuance of a bench warrant on August 19, 1989. The sole basis of Johnson's speedy trial and due process argument is that "[a]lthough in and of itself, five months is not an extremely lengthy delay, a crucial piece of evidence for the defense was lost during this period." Brief of Appellant at 28. The police radio tape recording made of the discussions between the dispatcher and officers on the night of Johnson's arrest was routinely destroyed 90 days later. Johnson claims the tape could have helped his case by providing insight into what Officer Love knew about the reported robbery when he stopped and frisked Johnson on April 3.
 
 
 9
 When considering whether the Speedy Trial Clause of the Sixth Amendment has been violated, any pre-indictment delay is irrelevant. In United States v. Lovasco, 431 U.S. 783 (1977), the Supreme Court said, "as far as the Speedy Trial Clause of the Sixth Amendment is concerned, such [preindictment] delay is wholly irrelevant, since our analysis of the language, history, and purposes of the Clause persuaded us that only 'a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge ... engage the particular protections' of that provision." Id. at 788-89, quoting United States v. Marion, 404 U.S. 307, 320 (1971). Therefore, the relevant period for Speedy Trial concerns began with the issuance of the operative indictment returned on July 18, 1989. See Lovasco, 431 U.S. at 788-89. The six week period between that indictment and Johnson's arraignment and the ten to twelve day period between his arrest and his arraignment are not unreasonable. Any prejudice that he claims to have suffered from the loss of tapes occurred before the indictment.
 
 
 10
 Johnson's due process claim is likewise untenable. He points to no procedure or operative delay which is unreasonable or unfair. The loss of the tapes, while regrettable, occurred before indictment and, in any event, caused no prejudice. Johnson contends that if he had the police tape of the robbery report he could have shown inconsistencies in the testimony of Officers Love and Quinter regarding the direction the assailants were reported to have run after the robbery. The opportunity to discredit testimony on this point, however, is speculative and of marginal use in view of the other circumstances supporting the reasonableness of the stop and frisk. The district court's finding that Johnson sustained no prejudice is not clearly erroneous.
 
 IV.
 
 11
 Finally, Johnson contends that the district court abused its discretion by admitting into evidence the gun found on him when he was arrested because "[t]he only issue at trial was whether Mr. Johnson was in possession of ammunition on the night of April 3, 1989." Brief of Appellant at 32. The trial court admitted the gun, noting that
 
 
 12
 [a]lthough the gun is not necessary to prove the existence of the ammunition, the gun is certainly intertwined with the ammunition. Without reference to the gun, the jury may not understand how the officers discovered the ammunition. Ammunition most likely would not be detected in a pat-down search nor would it create an unnatural bulge. The introduction of the gun is necessary to complete the story of the crime as to how the ammunition was discovered.
 
 
 13
 J.A. 166. We agree with the district court's observation and therefore find that the admission into evidence of Johnson's gun was not an abuse of discretion. Not only did its admission provide a relevant context for the crime, it rendered more credible the claim by the government that Johnson was in fact carrying ammunition.
 
 
 14
 For the reasons given we affirm Johnson's conviction.
 
 
 15
 AFFIRMED.