979 F.2d 848
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
John Dwight ABRAM, Defendant-Appellant.
 No. 92-5275.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: September 3, 1992
Decided: October 28, 1992
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Durham. Richard C. Erwin, Chief District Judge; William L. Osteen, Jr., District Judge. (CR-91-247-D)
 Walter C. Holton, Jr., HOLTON & MENEFEE, Winston-Salem, North Carolina, for Appellant.
 Robert H. Edmunds, Jr., United States Attorney, Sandra Jane Hairston, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.
 M.D.N.C.
 AFFIRMED.
 Before SPROUSE, WILKINS, and HAMILTON, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 John Dwight Abram appeals the district court's denial of his motion to suppress a gun seized from his person during the course of an investigatory stop and frisk. That gun, which proved to be stolen, formed the basis of Abram's subsequent plea of guilty to violating 18 U.S.C.A. §§ 922(g), 924(e)(1) (West Supp. 1992).* He is now serving a one-hundred and eighty-month sentence. Abram argues on appeal that the police lacked a reasonable suspicion for stopping him and likewise had no reasonable fear that he was armed. Our review of the parties' briefs and the record leads us to disagree and affirm.
 
 I.
 
 2
 Abram and his companion, Mr. Jones, were standing outside a Durham, North Carolina, public housing area known as McDougal Terrace one summer evening when officers Scott and Mitchell of the Durham Police Department drove up during the course of a routine patrol. Upon spotting the officers, Abram and Jones began running toward apartment G in building number 13-a building known by the officers to be a stash house for drugs. The officers watched as Abram and Jones opened a screen door to apartment G and knocked on a wooden interior door. No one came to the door and no one was in the vicinity.
 
 
 3
 Officer Scott, who recognized Jones, then approached Jones and asked him what he was doing in the area. Jones replied that he was visiting friends. Scott asked Jones what the large bulge in Jones's pocket was, and Jones voluntarily extracted a large wad of money, after which Scott frisked him for weapons and found a loaded gun in his waistband. The gun was taken into custody and Jones was released. Abram was sitting approximately one foot from the door to apartment G throughout this exchange.
 
 
 4
 When Scott returned to the patrol car, Officer Mitchell suggested that he should check the area more thoroughly. Scott returned to the doorway of apartment G and conducted a visual inspection of the area. He then opened the door slightly and saw a bag containing what he believed was crack cocaine in the door jamb. He thereupon turned to Abram, who was still sitting near the door, and began questioning him, but got no response. He then reached for Abram's waistband, felt a hard object, and extracted a loaded handgun. Abram was arrested for carrying a concealed weapon. Abram was subsequently indicted and convicted on federal charges, and now appeals the unfavorable suppression decision.
 
 II.
 
 5
 We perceive no constitutional violation in Officer Scott's conduct. Some objective level of justification is required to meet the reasonable suspicion standard supporting a stop and frisk. Terry v. Ohio, 392 U.S. 1 (1968). However, this level of justification need not rise to the level of suspicion required for a showing of probable cause. United States v. Sokolow, 490 U.S. 1, 7 (1989); United States v. Gooding, 695 F.2d 78, 82 (4th Cir. 1982). A totality of the circumstances test controls the reasonable suspicion determination. United States v. Cortez, 449 U.S. 411, 417-18 (1981).
 
 
 6
 Because the intrusion created by an investigatory stop and frisk is minimal, the reasonable suspicion standard is not onerous. Thus, in United States v. Moore, 817 F.2d 1105, 1107-08 (4th Cir.), cert. denied, 484 U.S. 965 (1987), we held that an officer's nighttime observation of a man walking away from an otherwise deserted area where a burglar alarm had just gone off gave the officer reasonable suspicion to stop the man and frisk him for weapons, even without further questioning to determine whether the man might be armed. We similarly held in United States v. Turner, 933 F.2d 240, 244 (4th Cir. 1991), that an officer with experience in narcotics investigations had reasonable suspicion to stop a woman to determine whether she was "cooking up" illegal drugs, after he observed the woman carry a cup of water out of a convenience store, walk to her car, and lean over the front seat as if to hide something.
 
 
 7
 In light of these precedents, we have no difficulty concluding that Officer Scott's suspicions concerning Abram were reasonable. Scott had three and one-half years of experience patrolling the McDougal Terrace area and during that time had made approximately fifty arrests, many of them drug related. He knew the area to be a high crime area, and knew the particular building which Abram and Jones approached to be a stash house for drugs. Abram and Jones began running toward the building when they saw the officers. Drugs were later found in the door jamb of the door which Abram and Jones opened. Even without considering whether the stop and frisk of Jones was valid (and it likely was, because, among other things, it appears that Jones consented), we find that Officer Scott had ample cause to believe that an investigatory stop was warranted. Given the nature of the crime under investigation, we likewise perceive no infirmity in Scott's decision to then frisk Abram for weapons. See United States v. Brockington, 849 F.2d 872, 876 (4th Cir. 1988) (recognizing that guns are a common tool of the drug trade).
 
 
 8
 We therefore affirm the district court's denial of Abram's motion to suppress evidence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 *
 Abram entered a conditional plea pursuant to Fed. R. Crim. P. 11(a)(2)