983 F.2d 1059
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mark WILLIAMS, Defendant-Appellant.
 No. 92-5225.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: November 19, 1992
Decided: January 7, 1993
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.
 Patricia Ann Barton, for Appellant.
 Richard Cullen, United States Attorney, Robert A. Spencer, Special Assistant United States Attorney, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before WILKINS, NIEMEYER, and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Mark Williams appeals his conviction of possession with intent to distribute five grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (1988), and carrying a firearm during a drug trafficking crime, in contravention of 18 U.S.C.A. § 924(c) (West Supp. 1992). Finding no error, we affirm.
 
 
 2
 Around midnight on August 28, 1991, a team of law enforcement officers was monitoring an area in Arlington County, Virginia, known as Green Valley. Approximately seventy percent of the county's illegal drug trade occurs in Green Valley. In response to a report that crack was being smoked behind a house, Officers Stewart Chase and Ronald Files drove to the vicinity. They pulled nose-to-nose with a car whose passenger seat was occupied by Williams. Chase went to investigate the report of crack smoking; Files remained behind.
 
 
 3
 Files noticed that as Williams watched Chase, whose badge was fully visible, exit the car and leave the scene, Williams appeared to reach under the dashboard of the car. Because this behavior seemed suspicious, Files exited his vehicle and approached Williams' vehicle. Williams shifted his focus to Files and continued to reach down. Files testified that, based on prior experience, he feared that Williams was reaching for a gun.
 
 
 4
 Files ordered Williams out of the car, identifying himself at least once as a police officer. As Williams exited the car, a marijuana cigarette fell to the ground. Chase returned to the scene and searched Williams' car. He discovered on the passenger side of the vehicle an open package of crack cocaine, marijuana laced with PCP, and a large sandwich bag containing four smaller packages of cocaine. Chase also recovered a gym bag with the initials "MW" from the vehicle. Inside the bag were a rock of crack, clothing, and a loaded.22 caliber revolver.
 
 
 5
 Williams was arrested and jailed. On September 28, 1991, he made an incriminating statement to law enforcement officers. On November 8, 1991, a suppression hearing on the admissibility of the evidence seized on August 28 was held. The district court denied the motion to suppress the evidence. Trial was held on January 8, 1992, in Williams' absence.
 
 
 6
 On appeal, Williams challenges as violative of his Fourth Amendment rights the denial of the suppression motion. He also contends that the statement made on September 28 should not have been admitted into evidence. Finally, Williams contends that he should not have been tried in absentia.
 
 
 7
 * A police officer may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion, based on articulable facts, that criminal activity is afoot. Terry v. Ohio, 392 U.S. 1, 30 (1968). This Court has elaborated on the Terry standard:
 
 
 8
 The presence or absence of reasonable suspicion must be determined in light of the totality of the circumstances confronting a police officer including all information available to an officer and any reasonable inferences to be drawn at the time of the decision to stop a suspect.
 
 
 9
 United States v. Crittendon, 883 F.2d 326, 328 (4th Cir. 1989). Factors to be considered in deciding whether a stop violated the Fourth Amendment include: characteristics of the area; suspicious behavior of the suspect; and training of the officers involved. United States v. Brignoni-Ponce, 422 U.S. 873, 884-85 (1975).
 
 
 10
 In the present case, the circumstances justified the stop. In his twoyear law enforcement career, Files had been involved in roughly seventy narcotics-related arrests. Since July 1991, Files had been working as part of a task force whose focus was the illegal drug trade in Green Valley, an area notorious for the amount of narcotics activity. Files himself had been involved in approximately sixty drug-related arrests in Green Valley since he joined the task force in July.
 
 
 11
 Based on his experience, Files considered Williams' behavior upon seeing Chase and Files to be suspicious. Specifically, Williams appeared to be secreting or reaching for something under the seat or dashboard. Files feared that Williams might have a gun. Further, Williams initially ignored Files' direction to exit the car. In light of the time of day, the high-crime location, Williams' suspicious movements, and Files' experience with narcotics offenders, the brief investigatory stop did not offend the Fourth Amendment. See United States v. Turner, 933 F.2d 240, 242-44 (4th Cir. 1991); United States v. Moore, 817 F.2d 1105, 1107 (4th Cir.), cert. denied, 484 U.S. 965 (1989).
 
 
 12
 As Williams exited the car, a marijuana cigarette fell to the ground. This gave officers probable cause to arrest Williams and to conduct a search of the vehicle incident to the arrest. See Rawlings v. Kentucky, 448 U.S. 98, 110-11 (1980); United States v. Bellina, 665 F.2d 1335, 1342 (4th Cir. 1981). Accordingly, the district court properly denied the motion to suppress the evidence seized during the search on August 28.
 
 II
 
 13
 On September 29, 1991, five weeks after his arrest and incarceration on state drug charges, Williams made an incriminating statement to law enforcement officers. Those officers, Thomas Kennedy and Thomas Perambo, testified at trial about the substance of the statement and the circumstances under which it was made. Although defense counsel became aware of the statement at some point between the suppression hearing on November 8, 1991, and trial on January 8, 1992, no motion to suppress the statement was filed. Nor did counsel object to introduction of the officers' testimony at trial. We accordingly review the admission of the statement for plain error. See Fed. R. Crim. P. 52(b).
 
 
 14
 On September 28, Williams was taken to the Arlington County courthouse, where state charges were dropped. Authorities had decided to lodge federal charges against Williams. Kennedy and Perambo were to take charge of Williams at the courthouse and to transport him to the federal courthouse for processing. While standing at the booking counter at the state courthouse, Williams asked Kennedy if he were in charge. Kennedy stated that he was. According to Kennedy, Williams then "said that he wanted to speak to me about this matter."
 
 
 15
 Williams was given his Miranda rights, see Miranda v. Arizona, 384 U.S. 436 (1966), and executed a waiver of rights form. Kennedy testified that, as he read Williams each individual right, he asked if Williams understood the right. Williams verbally acknowledged that he did, Kennedy wrote "yes" next to each right listed on the form, and Williams initialed each "yes." Williams then incriminated himself, saying that he had accompanied the driver of the car to Washington, where the driver obtained crack cocaine. Williams stated that the driver gave the crack to him, and he then packaged it. Williams also acknowledged handling the gun.
 
 
 16
 Officers must terminate the custodial interrogation of an accused if the accused requests counsel. Miranda v. Arizona, 384 U.S. at 474. In Edwards v. Arizona, 451 U.S. 477 (1981), the Court considered the application of Miranda to officers' reinitiation of questioning:
 
 
 17
 [A]n accused, ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.
 
 
 18
 Id. at 484-85. "Edwards does not foreclose finding a waiver of Fifth Amendment protections after counsel has been requested, provided the accused has initiated the conversation or discussions with authorities." Minnick v. Mississippi, 59 U.S.L.W. 4037, 4039 (U.S. 1990).
 
 
 19
 In this case, it is clear that it was Williams who initiated the conversation with officers at the state courthouse. It is equally apparent from the circumstances surrounding the waiver of rights form that Williams knowingly and voluntarily waived his rights.
 
 III
 
 20
 Williams was tried on January 8, 1992, in absentia. On the morning of trial, the court inquired of Williams' attorney, Patricia Barton, as to Williams' whereabouts. Barton stated that she had spoken to Williams the day before and had stressed to him the importance of being at trial the next day. Williams informed Barton that he was looking for a ride to the courthouse.
 
 
 21
 The court had a marshal page Williams, but he was nowhere to be found. The court noted that Williams had failed to appear at a December 31, 1991, bond revocation hearing. On the morning of the bond proceeding, Williams had called a pretrial services officer to say that he had overslept but was on his way to court. He never showed up, however.
 
 
 22
 The court waited fifteen minutes for Williams to arrive, then entertained the government's motion to try Williams in absentia. After hearing from both parties, the court concluded that trial should proceed despite Williams' absence, which the court determined to be voluntary. The court noted that it would be burdensome on the court and the witnesses to reschedule trial. The court then began hearing evidence.
 
 
 23
 After lunch break, defense counsel stated that she had contacted the pretrial service worker, Joanne Marsden, whom Williams had called at 12:10 that afternoon. Marsden told Williams that trial had begun; Williams stated that he thought the trial was scheduled for the next day. Marsden instructed Williams to turn himself in to a police station and to tell officers that a warrant was out for his arrest. The court recessed to have the marshals contact the police station. However, the marshals discovered that Williams had not turned himself in as instructed. Trial proceeded.
 
 
 24
 This Court reviews a district court's decision to try a defendant in absentia for abuse of discretion, and the Court will not disturb the district court's related factual findings unless they are clearly erroneous. United States v. Camacho, 955 F.2d 950, 953 (4th Cir. 1992).
 
 
 25
 A defendant may waive his constitutional right to be present at his own trial. Taylor v. United States, 414 U.S. 17, 18-20 (1973); United States v. Camacho, 955 F.2d at 953. Under Fed. R. Crim. P. 43, which codifies the constitutional and common law right to presence, a defendant's presence generally is required at all stages of trial. This Court has held that, under the rule, a defendant's absence from the commencement of trial "without compelling justification," constitutes a waiver of the right to be present. United States v. Rogers, 853 F.2d 249, 251-52 (4th Cir.), cert. denied, 488 U.S. 946 (1988); see United States v. Peterson, 524 F.2d 167, 184 (4th Cir. 1975), cert. denied, 423 U.S. 1088 (1976).
 
 
 26
 A court may not infer waiver simply because the defendant is absent. Rather, the court must inquire into the reasons for the absence. United States v. Rogers, 853 F.2d at 252. A finding of waiver must be made on a case-by-case basis. United States v. Peterson, 524 F.2d at 185.
 
 
 27
 The district court in this case made a full inquiry into the reasons for Williams' absence. Williams had been admonished the day before trial to appear the next day for trial. He previously had failed to appear at a scheduled hearing. He was not merely late; he simply never showed up. The court understandably concluded that Williams' absence was voluntary and that there was little likelihood that Williams would appear if trial were rescheduled. Further, the court noted that its crowded docket made rescheduling difficult. Finally, there was testimony that, although most witnesses were from the area, it nonetheless would be burdensome both to witnesses and to the government to reschedule the trial.
 
 
 28
 Under the facts of this case, the district court did not abuse its discretion in determining first that Williams' absence was voluntary and second that there was no compelling public interest in continuing the trial. See United States v. Camacho, 955 F.2d at 954; United States v. Peterson, 524 F.2d at 185.
 
 IV
 
 29
 We accordingly affirm Williams' conviction. As our review of the materials before us reveals that it would not significantly aid the decisional process, we dispense with oral argument.
 
 AFFIRMED