7 F.3d 227
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jack Edward KELLS, Defendant-Appellant.
 No. 93-5107.
 United States Court of Appeals,
Fourth Circuit.
 Argued: July 15, 1993.
Decided: September 27, 1993.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Fayetteville. Malcolm J. Howard, District Judge. (CR-92-5)
 Gale Murray Adams, Fayetteville, North Carolina, for Appellant.
 Thomas Ernest Booth, United States Department of Justice, Washington, D.C., for Appellee.
 James R. Dedrick, Acting United States Attorney, Jane H. Jolly, Assistant United States Attorney, Washington, D.C., for Appellee.
 E.D.N.C.
 AFFIRMED.
 Before WILKINS, NIEMEYER, and HAMILTON, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 After his motion to suppress critical evidence was denied, Jack Edward Kells pled guilty to possession of cocaine with intent to distribute and possession of a firearm during and in relation to a drug trafficking crime and was sentenced to 120 months imprisonment. As a condition of the guilty plea he was allowed to preserve for appeal his contention that his motion to suppress was wrongly decided. He now appeals that issue, contending that the evidence leading to conviction was obtained through a search in violation of the Fourth Amendment. For the reasons that follow, we affirm.
 
 
 2
 On June 9, 1991, two patrolmen with the Red Springs, North Carolina police department, Ronnie Patterson and John Ammons, responded to a dispatch report that shots had been fired at a public park. The police officers knew the park to be an area of much drug activity and violence, and they had often received complaints of shots being fired there. When Officers Patterson and Ammons arrived at the park and questioned a group of youngsters who were five or six years old, one of the children pointed to a shelter about 75 feet away, indicating that the shots had come from there. Patterson and Ammons walked toward the shelter, where about 15 people were gathered.
 
 
 3
 As the officers approached the park shelter, Jack Kells stepped out and was the first one to meet them. He had a beer in his hand which he dropped to his side. The officers told Kells that they needed to search him and the others for weapons. Officer Patterson then turned to Kells, the closest person to him, and, noticing a bulge in his pocket, told him that he was under arrest for drinking in the park. Patterson reached for Kells' pants pocket, but Kells deflected his arm. Patterson advised Kells that "if he did it again [he] was going to charge him with assault." The officer attempted to pat Kells down a second time and Kells again grabbed Patterson's arm. Officer Patterson then"grabbed [Kells'] arm and twisted it ... and [he] told Officer Ammons to search his pocket." The subsequent search of Kells' pocket yielded approximately 40 packets of "crack" cocaine and over $400. Kells was handcuffed and taken to the patrol car, where he was allowed to talk with his mother. Officer Ammons saw Kells' mother remove a pistol from Kells' shirt and begin to walk away. As the officer followed her, Kells broke from custody and ran, but tripped over a fence wire and the officers were able to apprehend him. The officers then recovered from Kells' mother the weapon she had taken from her son's shirt.
 
 
 4
 It is well established that a police officer may stop and briefly detain a person for investigative purposes when that officer has a reasonable suspicion, based on articulable facts, that criminal activity is afoot. See United States v. Sokolow, 490 U.S. 1, 7 (1989). The presence or absence of reasonable suspicion is to be determined in light of the totality of the circumstances, including the information known to the officer and any reasonable inferences to be drawn at the time of the stop. See United States v. Crittendon, 883 F.2d 326, 328 (4th Cir. 1989).
 
 
 5
 In this case the officers responded to a dispatch report that shots had been fired at a public park which they knew to be an area of drug trafficking and the source of numerous previous complaints about gunfire. They were directed to the source of the shots at the park shelter, where Kells confronted them with a beer in his hand, giving them reason to believe that he was violating a city ordinance prohibiting the public consumption of alcohol. The totality of these circumstances raised an adequate level of suspicion to provide the officers with a sufficient basis for briefly detaining Kells to investigate his conduct further. See United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993) ("an area's propensity toward criminal activity is something that an officer may consider" in reaching a reasonable suspicion that criminal activity is underway); United States v. Moore, 817 F.2d 1105, 1107 (4th Cir.) (finding that a "stop and frisk" by a policeman who arrived at the scene of a crime in response to a burglar alarm but without a description of the perpetrator was justified by, among other factors, the fact that the stop occurred "[o]nly two or three minutes ... since [the police officer] first received the dispatcher's call"), cert. denied, 484 U.S. 965 (1987); Myers v. Morris, 810 F.2d 1437, 1456-57 (8th Cir.) (in determining existence of probable cause, officers entitled to rely on statements made by children aged 5 to 12), cert. denied, 484 U.S. 828 (1987).
 
 
 6
 Moreover, once a police officer has reasonably concluded that the person whom he has legitimately stopped might be armed and presently dangerous, the officer is justified in conducting a limited search for weapons. See Pennsylvania v. Mimms, 434 U.S. 106, 111-12 (1977) (per curiam). In Mimms, the court concluded that an officer who observed a bulge in the clothing of the person he stopped was permitted to conclude that the person was armed and posed a serious and present danger to the safety of the officer. The court held that, under those circumstances, a limited "pat-down" search for weapons fell within the scope of the Fourth Amendment. Id. at 112. Similarly, in this case the officers observed a bulge in Kells' clothing, prompting them to attempt a pat-down search of Kells' body. Because the initial stop of Kells was valid, the attempt thereafter to pat down his person was likewise proper.
 
 
 7
 Before the officer was able to conduct a pat-down search of Kells, however, Kells deflected his arm. When the officer again tried to conduct the pat-down, Kells grabbed his arm a second time. At that point, the officers properly arrested Kells because he was interfering with an official act by the officer. See State v. Lynch, 380 S.E.2d 397, 398 (N.C. App. 1989) (in North Carolina, statutory offense of resisting a public officer "is not limited to resisting an arrest but includes any resistance, delay, or obstruction of an officer in the discharge of his duties"). Because the arrest was valid, so too was the subsequent search which yielded drugs and money leading to Kells' drug conviction. See Michigan v. DeFillippo, 443 U.S. 31, 35 (1979) (an officer may conduct a warrantless search of a person incident to a valid arrest). The valid arrest also led to the legitimate discovery and seizure of the firearm.
 
 
 8
 Finding no error in the search of Kells and the seizure of the drugs, money and gun, we affirm the judgment of the district court.
 
 AFFIRMED