BOWEN, Presiding Judge.
Jimmie Lee Watts, the appellant, was convicted of the unlawful possession of cocaine and was sentenced to 10 years’ imprisonment as a habitual offender. On this direct appeal from that conviction he contends that there was no probable cause for his arrest and that the subsequent seizure of cocaine was illegal and that, consequently, the trial court should have granted his motion to suppress the cocaine.
Charles Green of the Mobile Police Department testified that he was patrolling an area on Center Street in Mobile on the evening of December 23,1992. He testified that he had “worked that area for ... many years and [had] made numerous drug arrests on Center Street.” R. 24. Green testified that the area was “a known drug location,” and that he “had observed a lot of drug activity going on in that particular area.” R. 25, 18. He said that he “had been observing it off and on during th[at] day.” R. 50.
Green testified that later that same evening he observed seven to ten people and what “appeared to be drug activity going on.” R. 24. He observed “vehicles stopping [and] people leaning inside the vehicles.” R. 18. According to Green, the people were standing “in the middle of the street” and “constant cars [were] coming in and out.” R. 51-52, 64. He testified: “Based on my experience in working narcotics and making numerous arrests in certain areas, from what I seen that particular day [there] appeared to be drug activity taking place.” R. 26. Officer Green also stated: “I couldn’t see any activity inside the vehicles. But my prior experience with narcotics, it appeared to me that some type of drug activity was going on. And this is a known drug location where I have made numerous drug arrests in the past.” R. 52.
Green testified that he contacted other officers and established a plan to conduct an investigatory stop of the suspicious individuals: “We set a plan to come into the location [from] different directions, because in previous times when we tried to get in there and check people, they would run and we wouldn’t have no one to corner off certain locations.” R. 49.
*1107 Green, testified that he and three other officers approached the subjects, in three patrol cars coming from three different directions. Their purpose was to make an investigatory stop. Green testified: “[W]hen we initially went in, there wasn’t any type of arrests to be made. We was there to check out persons and find out why they was standing in the street and leaning into vehicles.” R. 26.
According to Green, when the officers approached the men, most of the members of the group ran. Green focused his attention on three individuals who “walked back off the street onto the curb” R. 52. Green immediately got out of his car, with his revolver drawn, and ordered the appellant and the two other men “to the ground for safety purposes.” R. 27. The other officers pursued the fleeing suspects.
Green testified that he observed the appellant reach into his pants pocket and drop several items to the ground. The appellant then fell to the ground and “rolled on top of [them] to cover the articles.” R. 54. Green stated that he rolled the appellant over and retrieved the items the appellant was apparently attempting to conceal. Those items included what was later determined to be two “rocks” of crack cocaine wrapped in one piece of paper and marijuana wrapped in another piece of paper. At that point, the appellant was searched for weapons and placed under arrest. A crack pipe was subsequently discovered on the appellant’s person when he was being “booked” at the police station.
“[T]he Court ... acknowledge^] the authority of the police to make a forcible stop of a person when the officer has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity.” United States v. Place, 462 U.S. 696, 702, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983) (emphasis in original). Officer Green articulated the specific basis for his reasonable suspicion justifying his investigatory detention of the appellant. The articulated facts that provide the reasonable suspicion for the initial investigatory stop in this case are: the officer’s observation of a number of people standing in the middle of the street in a known “drug area” where arrests for drug offenses had been made in the past; the officer’s observation of the “constant” stream of vehicles that stopped while people leaned inside those vehicles; the officer’s opinion that based on his experience this appeared to be “drug activity”; and the fact that most of the suspects fled upon the approach of the police officers. See United States v. Lender, 985 F.2d 151, 154 (4th Cir.1993) (reasonable suspicion to justify investigatory stop existed where officers observed defendant in small group on a corner in an area with “a large amount of drug traffic” and observed others “looking down into his open palm”); United States v. Garrett, 959 F.2d 1005, 1007 (D.C.Cir.1992) (reasonable suspicion to justify investigatory stop existed where officers observed defendant exchange small object for money in “high narcotic area”); People v. Ratcliff, 778 P.2d 1371, 1379 (Colo.1989) (reasonable suspicion to justify investigatory stop existed where officer observed defendant participate in an exchange that “resembled a drug transaction” in “a high drug-trafficking area”); State v. Stinnett, 104 Nev. 398, 760 P.2d 124, 127 (1988) (reasonable suspicion to justify investigatory stop existed where officers observed 3-4 men huddled together in “a neighborhood that was known for drug related activity” and one of the men fled on seeing police); State v. Butler, 331 N.C. 227, 415 S.E.2d 719 (1992) (in finding that investigatory stop of defendant was justified by reasonable suspicion, the court stressed that officer “observed defendants who was in the midst of a group of people,] not simply in a general high crime area, but on a specific corner known for drug activity and as the scene of recent, multiple drug-related arrests”). This ease does not involve the stop of a group of persons who were merely standing together in a high-drug area. Compare Lawrence v. United States, 566 A.2d 57, 59-60, n. 5 (D.C.App.1989).
“The fact that an area is known for crime can serve to create a reasonable suspicion. See Lewis v. State, 518 So.2d 214, 217 (Ala.Cr.App.1987). Dixon’s deliberately furtive actions and flight at the approach of a police officer ‘are strong indicia of mens rea, and when coupled with *1108 specific knowledge on the part of the officer relating the suspect to the evidence of the crime, they are proper factors to be considered in the decision to make an arrest.’ Molina v. State, 533 So.2d 701, 707 (Ala.Cr.App.1988), quoting Sibron v. New York, 392 U.S. 40, 66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968).”
Dixon v. State, 588 So.2d 903, 906 (Ala.1991), cert. denied, 502 U.S. 1044, 112 S.Ct. 904, 116 L.Ed.2d 805 (1992). “While the fact that someone was in a high crime neighborhood is not by itself enough to raise a ‘reasonable suspicion,’ an area’s disposition toward criminal activity is an articulable fact to be considered. United States v. Moore, 817 F.2d 1105 (4th Cir.1987), cert. denied, 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 396 (1987).” Gaskin v. State, 565 So.2d 675, 677 (Ala.Cr.App.1990).
Reasonable suspicion, like probable cause “is to be viewed from the vantage point of a prudent, reasonable, cautious police officer ... guided by his experience and training.” United States v. Davis, 458 F.2d 819, 821 (D.C.Cir.1972).
“Among the circumstances that can arouse a law enforcement officer’s reasonable suspicion are his knowledge of the methods used in recent criminal activity, the character of the persons engaged in such activity, the character of the particular area, and the behavior of the suspect who appears to be evading police contact. See Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); United States v. Davis, 561 F.2d 1014 (D.C.Cir.), cert. den., 434 U.S. 929, 98 S.Ct. 416, 54 L.Ed.2d 290 (1977). In all situations, the officer is entitled to assess the facts in light of his experience. United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); Terry v. Ohio, [392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ]. Furthermore, as Mr. Justice Powell observed in his concurring opinion in United States v. Mendenhall, 446 U.S. 544 [562-65], 100 S.Ct. 1870, 1882, 64 L.Ed.2d 497 (1980):
“ ‘[I]t is important to recall that a trained law enforcement agent may be “able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer.” (quoting Brown v. Texas, 443 U.S. [47, 52 n. 2, 99 S.Ct. 2637, 2641 n. 2, 61 L.Ed.2d 357 (1979) ].’ ”
Pianzio v. State, 423 So.2d 258, 265-66 (Ala.Cr.App.1981) (DeCarlo, J., dissenting). “[W]hen used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person and for action on that suspicion.” United States v. Cortez, 449 U.S. 411, 419, 101 S.Ct. 690, 695-96, 66 L.Ed.2d 621 (1981).
As part of the issue, the appellant contends that Officer Green exceeded the limits of a Terry stop by effecting the stop at gunpoint. However, because Officer Green was justified in stopping the appellant, he was also justified in using reasonable force to effectuate that stop.
“ ‘Inherent in the officer’s right to stop a suspect and demand his name, address, and an explanation of his actions is the right to detain him temporarily to verify the information given or to obtain information independently of his cooperation.’ State v. Fauria, 393 So.2d 688, 690 (La.1981). ‘In general, officers may take such steps as are “reasonably necessary to protect their personal safety and to maintain the status quo” so that the limited purposes of the stop may be achieved. United States v. Hensley, [469] U.S. [221] [235-37], 105 S.Ct. 675, 684, 83 L.Ed.2d 604 (1985).’ United States v. Jones, 759 F.2d 633, 636-37 (8th Cir.1985), cert. denied, [474] U.S. [837], 106 S.Ct. 113, 88 L.Ed.2d 92 (1985). ‘Both a stop and an arrest are seizures within the meaning of the fourth amendment; by definition, once a person has been seized he or she has no right to leave, and the right to detain the suspect must include the right to enforce that detention by the use of force, if necessary.’ Williamson, The Dimensions of Seizure: The Concepts of ‘Stop’ and ‘Arrest’, 43 Ohio State L.J. 771, 816 (1982). Moreover, ‘most courts have held that use of force in *1109 making the seizure will not convert what is otherwise a Terry stop into an arrest.’ Id.
[[Image here]]
“Although this issue has not been decided by the Supreme Court of the United States, ‘[l]ower courts have concluded that a Terry-stop may include a forcible detention.’ [1 J. Cook,] Constitutional Rights of the Accused at p. 71 [ (2d ed. 1985) ].”
Walker v. City of Mobile, 508 So.2d 1209, 1212-13 (Ala.Cr.App.1987).
Once Officer Green found that the items the appellant was attempting to conceal appeared to be crack cocaine and marijuana, Officer Green’s reasonable suspicion ripened into probable cause to arrest. See Ativell v. State, 594 So.2d 202, 211 (Ala.Cr.App.1991), cert. denied, 594 So.2d 214 (Ala.1992). “ ‘Although the initial stop of the suspect may have been justified only by reasonable suspicion, additional facts gathered from that stop may strengthen that suspicion into probable cause.’ United States v. Martinez, 808 F.2d 1050, 1055 (5th Cir.), cert. denied, 481 U.S. 1032, 107 S.Ct. 1962, 95 L.Ed.2d 533 (1987).” Molina v. State, 533 So.2d 701, 707 (Ala.Cr.App.1988), cert. denied, 489 U.S. 1086, 109 S.Ct. 1547, 103 L.Ed.2d 851 (1989). See also Nodd v. State, 549 So.2d 139, 142 (Ala.Cr.App.1989) (“[a]fter the defendant was stopped and the marijuana had been observed inside the vehicle, the officer’s reasonable suspicion to investigate ripened into probable cause to arrest”).
The judgment of the circuit court is affirmed.
Affirmed.
All Judges concur.