35 F.3d 557
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kenneth Donnell GRANGER, Defendant-Appellant.
 No. 93-5595.
 United States Court of Appeals, Fourth Circuit.
 Argued July 15, 1994.
Decided August 29, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Henry C. Morgan, Jr., District Judge. (CR-92-213).
 Argued: James Orlando Broccoletti, Zoby & Broccoletti, P.C., Norfolk, VA. On brief: Kimberly L. Shoemaker, Zoby & Broccoletti, P.C., Norfolk, VA, for Appellant.
 Argued: Arenda L. Wright Allen, Assistant United States Attorney, Norfolk, VA. On brief: Helen F. Fahey, United States Attorney, Norfolk, VA, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, and BUTZNER and PHILLIPS, Senior Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Kenneth Donnell Granger appeals his conviction on one count of being a convicted felon in possession of a firearm in violation of 18 U.S.C. Sec. 922(g)(1). Granger challenges as error the district court's denial of his motion to suppress certain evidence on the ground that he was subject to an illegal search and seizure. We affirm Granger's conviction because we find that the district court did not err in denying Granger's suppression motion.
 
 
 2
 * Granger was arrested in a neighborhood of Portsmouth, Virginia known as a high crime, drug-infested area. He had taken a bus to the area with the intention of visiting a friend. Local narcotics detectives happened to be in the area searching for a suspected narcotics offender. Detective Thomas Snipes observed Granger walking quickly down the street towards his undercover car. Granger had passed several undercover officers at the end of a row of houses, and Snipes observed Granger glance backwards at the officers several times. According to Snipes, when Granger noticed Snipes in his vehicle, he stopped, back-tracked to a house he had just passed, approached a door of the house, and pretended to knock on it. Snipes testified that based on these observations, he considered Granger's actions suspicious.
 
 
 3
 Detective Snipes parked his car and approached Granger who then, according to Snipes, stepped in front of another door of the house and actually knocked on it. Although Snipes was not in uniform, because the weapon in his shoulder holster was visible, Granger realized Snipes was a police officer. Snipes requested identification from Granger and asked why he was in the area. Snipes then asked Granger whether he had any weapons or narcotics. Granger responded that he did not. Snipes next asked Granger "you don't mind if I check you?" to which Granger answered "no" and lifted his hands up slightly. Snipes checked Granger's front pockets and then the back ones. In Granger's rear pocket, the officer felt what he believed to be a weapon. He retrieved a loaded Walther .32 caliber semi-automatic weapon. Snipes then arrested Granger.
 
 
 4
 Granger testified that he took a bus to the area, got off, and began walking quickly to a friend's house. He stated that he went directly to the door of his friend's apartment and knocked twice. According to Granger, Snipes approached, accused him of trespassing, and asked for permission to search. Granger testified that when he responded "no", Snipes grabbed his arm and told him that he was going to search him anyway. Granger claimed Snipes then turned him around so that he faced the wall and searched him.
 
 
 5
 During the Snipes-Granger encounter, Detective Robert G. Shelton spoke with Granger's friend, Ronald Benton. Benton acknowledged that he knew Granger and that he was expecting Granger to visit him. Shelton did not hear the majority of Granger and Snipes' conversation.
 
 
 6
 The district court found that Snipes had observed Granger walking towards him quickly and glancing periodically over his shoulder at several undercover officers. The court further found that when Granger noticed Snipes, Granger turned around, retraced his steps a few feet and approached the house in which Ronald Benton lived. In light of Granger's actions, the reputation of the neighborhood, and the officer's suspicion that Granger might be associated with the person sought by the detectives, the court concluded that Snipes had an articulable and reasonable suspicion that Granger was engaged in criminal activity. The court also determined that Snipes was justified in requesting identification, and when Granger failed to produce any, in asking Granger whether he possessed any weapons or narcotics. The court also found as fact that in response to Snipes' request to search for weapons or drugs, Granger consented to the search, both verbally and by raising his hands.
 
 
 7
 Finding no constitutional violation, the district court denied Granger's motion to suppress. Granger subsequently withdrew his not guilty plea and entered a conditional plea of guilty to the one count indictment charging him with being a convicted felon in possession of a firearm. See 18 U.S.C. Sec. 922(g)(1). The court sentenced Granger to forty-six months imprisonment.
 
 
 8
 This appeal followed.
 
 II
 
 9
 We address whether the district erred in concluding that Detective Snipes conducted a permissive investigatory stop and in finding that the search of Granger was consensual.
 
 
 10
 * To determine whether the stop was permissible under the Fourth Amendment, we must consider "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry v. Ohio, 392 U.S. 1, 20 (1968). We hold that Detective Snipes' conduct in initially approaching Granger and in questioning him constituted a permissive investigatory stop.
 
 
 11
 Snipes testified that he found Granger's actions suspicious because Granger was walking quickly, continually glancing over his shoulder at several undercover officers, retraced his steps, and pretended to knock on a door and then actually knocked on the adjoining door. Further, the neighborhood was a high crime area, and Snipes believed that Granger might have been an associate of the narcotics suspect for whom the officers were searching. Under these circumstances, Snipes possessed the requisite reasonable and articulable suspicion justifying a Terry stop of Granger.
 
 
 12
 Granger asserts that Snipes' reasonable suspicion could not be based on the fact that the area has a reputation for high crime and drug trafficking. Of course, the nature of the area cannot be the only factor justifying the investigatory stop, see Brown v. Texas, 443 U.S. 47, 52 (1979), but it is one factor which an officer may appropriately consider. See United States v. Moore, 817 F.2d 1105, 1107 (4th Cir.), cert. denied, 484 U.S. 965 (1987); United States v. Constantine, 567 F.2d 266, 267 (4th Cir.1977), cert. denied, 435 U.S. 926 (1978). Here, Snipes' reasonable suspicion was based on the nature of the area as well as Granger's suspicious actions and Snipes' belief that Granger could be an associate of the narcotics suspect sought by the officers. See United States v. Cortez, 449 U.S. 411, 418 (1981) (in assessing whether the stop was justified the totality of the circumstances facing the officer must be taken into account).
 
 
 13
 Granger also argues that the stop of Granger was not permissible because the fact that an individual notices police officers in a high crime area and attempts to avoid them does not create reasonable suspicion justifying a Terry stop. We believe Granger's actions revealed more than an attempt merely to avoid crossing paths with the officers. Snipes observed Granger looking nervously at the undercover officers after he passed them. The officers were not following Granger. Then, when Granger noticed Snipes, he retraced his steps, walked up to a door of a house he had just passed, and pretended to knock on it. Because Granger acted nervously and took some unusual actions, Snipes reasonably could have suspected Granger of criminal activity. Examining the totality of the circumstances--Granger's actions, the character of the neighborhood, and the officer's purpose in being in the area--we find no error in the district court's conclusion that the Terry stop of Granger was justified.
 
 
 14
 We also uphold the district court's finding that the officer's actions were reasonably related in scope to the circumstances initially justifying the stop. Snipes inquired into Granger's purpose in the area and asked for some identification. When Granger could produce none, Snipes asked whether Granger was carrying any weapons or narcotics. Given the fact that Granger had no identification, the nature of the area, and the officer's belief that Granger might have been associated with the narcotics suspect, his question and concern for his safety were reasonable. That brings us to the issue whether Granger consented to the search that followed.
 
 B
 
 15
 It is well-established that "a search conducted pursuant to a valid consent is constitutionally permissible." Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). We review the district court's finding that Granger consented to the search under a clearly erroneous standard. United States v. Wilson, 895 F.2d 168, 172 (4th Cir.1990). Snipes and Granger gave conflicting testimony about Granger's response to Snipes' request for permission to search. The lower court apparently viewed Snipes' testimony as more credible than that of Granger's and found as fact that Granger consented to the search verbally and by raising his hands from his sides to facilitate the officer's search. Nothing in the record suggests the district court's finding was clearly erroneous. The lower court had the opportunity to observe the demeanor of both witnesses, and we have no reason to overturn its factual finding. Under the facts as found by the district court, the search of Granger was consensual and consistent with the Fourth Amendment. Accordingly, Granger's conviction is
 
 
 16
 AFFIRMED.